In the United States District Court
Western District of Arkansas
Fort Smith Division

Stephanie Reygadas                                      Plaintiff

v.                     Case No. 2:18-cv-02184-PKH

DNF Associates, LLC                                      Defendant

## Plaintiff Stephanie Reygadas' Opposition to Defendant DNF Associates, LLC's Motion to Dismiss

DNF Associates, LLC sued Reygadas in its own name with a debt collection complaint supported by an affidavit of one of its owners and managing member. It knew that once it sued, Reygadas might hire an attorney and she did.

After DNF Assocs. knew Reygadas was represented by counsel and the debt collection case was dismissed, it hired another debt collector to make a "settlement" directly with Reygadas, hoping she would send in a payment without discussing this with her attorney.

DNF Assocs. knows contacting a consumer represented by counsel violates the FDCPA and the AFDCPA but tries to have Reygadas' complaint for violations of those statutes dismissed by convincing the court it isn't really a debt collector – even though it sued Reygadas to collect the debt – and that it can't be held responsible for the other debt collector's communications.

The Court should reject its arguments because Reygadas' plausibly alleges DNF Assocs.' primary purpose is to collect debt and it put a deceptive plan in place hoping Reygadas would pay the debt without her retained attorney's involvement.

## Introduction

On October 29, 2018, Reygadas filed her Complaint against DNF Assocs. for violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, *et seq.*, and the Arkansas Fair Debt Collection Practices Act (AFDCPA), Ark. Code Ann. § 17-24-501, *et seq.*[1] Reygadas' claims for violations of the FDCPA and the AFDCPA are based on DNF Assocs. contacting her through Radius Global Solutions, after DNF Assocs. knew she was represented by counsel regarding a debt. On November 20, 2018, DNF Assocs. filed its motion to dismiss and memorandum of law, arguing that Reygadas had failed to articulate facts which would provide plausible grounds for the causes of action alleged.[2] On November 28, 2018, Reygadas filed her First Amended Complaint.[3] Reygadas files this opposition asking the Court to deny DNF Assocs.' motion. The factual allegations, which the Court must take as true,[4] are as follows.

---

[1] Document 1.

[2] Documents 8 and 9.

[3] Document 11.

[4] *See Wilson v. Arkansas Department of Human Services,* 850 F.3d 368 (8th Cir. 2017).

DNF Assocs. does not originate loans or extend credit to consumers.[5] DNF Assocs. purchases defaulted consumer debts for pennies on the dollar, so it can derive large profits from collecting on the consumer debt it purchases.[6] Almost all of DNF Assocs.' business and resources are devoted to debt collection.[7] Almost all of DNF Assocs.' revenue is derived from debt collection.[8] Almost all of DNF Assocs.' expenses are related to debt collection.[9]

After purchasing defaulted consumer debts, DNF Assocs. contracts with other debt collectors across the country, including Radius Global Solutions, LLC (Radius Global Solutions) to collect the consumer debts.[10] DNF Assocs. supplies these hired debt collectors with information about the debts and personal information about the consumers who allegedly owe the debt to aid in the debt collection.[11] The debt collectors then contact the consumers in DNF Assocs.' name and at DNF Assocs.' direction.[12] DNF Assocs. further participates in the debt collection process by setting

---

[5] Document 11, ¶ 13.

[6] Document 11, ¶ 14.

[7] Document 11, ¶¶ 30-31.

[8] Document 11, ¶ 32.

[9] Document 11, ¶ 33.

[10] Document 11, ¶ 15.

[11] Document 11, ¶ 16.

[12] Document 11, ¶ 17.

parameters of the terms and amounts of payments made by the consumers towards the debt.[13] If DNF Assocs. is not satisfied with one debt collector's efforts in the collecting the debt, it hires another debt collector to collect on the debt from consumers.[14] Any debt collector who collects payments on the consumer debt, then sends a portion of that payment to DNF Assocs. through electronic funds transfers or the U.S. Mail.[15]

If a debt collector cannot collect on the debt from a consumer, DNF Assocs. hires lawyers and law firms, like Michael A. Jacob, II and Jacob Law Group, PLLC, who are also debt collectors, to collect the debt.[16] DNF Assocs. files debt collection lawsuits in its own name as a plaintiff, so it can obtain judgments against consumers, become a judgment creditor in its own name, and then execute on the judgment by wage and account garnishment against consumers.[17] Since September 7, 2016, DNF Assocs. has filed at least 57 debt collection lawsuits in Arkansas, and many more across the country.[18] DNF Assocs.' debt collection complaints are supported by Affidavits of Lawrence Schiavi.[19] Schiavi's Affidavits are attached as exhibits to DNF

---

[13] Document 11, ¶ 18.

[14] Document 11, ¶ 19.

[15] Document 11, ¶ 20.

[16] Document 11, ¶ 21.

[17] Document 11, ¶ 22.

[18] Document 11, ¶ 29.

[19] Document 11, ¶ 23.

Assocs.'s debt collection complaints.[20] Schiavi's Affidavits typically state the consumer sued is indebted to DNF Assocs. in a certain amount of money.[21]

Schiavi is the managing partner of DNF Assocs.[22] Schiavi has worked in the debt collection industry since 2007.[23] Schiavi is a 10% owner of DNF Assocs. and a 20% owner of Diverse Funding Associates LLC, another entity that is a debt buyer, debt collector, and collection agency.[24]

On April 19, 2016, DNF Assocs. applied for a collection agency license with the Arkansas State Board of Collection Agencies.[25] As part of the application process, DNF Assocs. proposed David J. Maczka as its manager.[26] Maczka has over 20 years of experience in the debt collection industry.[27] Maczka verified his knowledge of the Fair Debt Collection Practices Act during the application process by attaching his results from an FDCPA compliance training course.[28] Maczka's test results show he knew

---

[20] Document 11, ¶ 24.

[21] Document 11, ¶ 26.

[22] Document 11, ¶ 25.

[23] Document 11, ¶ 27.

[24] Document 11, ¶ 28.

[25] Document 11, ¶ 34.

[26] Document 11, ¶ 35.

[27] Document 11, ¶ 36.

[28] Document 11, ¶ 37.

that when a consumer is represented by an attorney, a debt collector may communicate with the attorney only.[29]

The Arkansas State Board of Collection Agencies granted DNF Assocs.' application for a license, and DNF Assocs. is a licensed "collection agency" with the Arkansas State Board of Collection Agencies.[30] The term "collection agency" has three prongs:

      a.    any person, partnership, corporation, association, limited liability corporation, or firm, which engages in the collection of delinquent account, bills, or other forms of indebtedness owed or due to be owed or due to another; or

      b.    any person, partnership, corporation, association, limited liability corporation, or firm which solicits claims for collection; or

      c.    any person, partnership, corporation, association, limited liability corporation, or firm that purchases and attempts to collect delinquent accounts or bills.[31]

---

[29] Document 11, ¶ 38.

[30] Document 11, ¶¶ 39-40.

[31] Document 11, ¶ 41, citing Ark. Code Ann. § 17-24-501.

DNF Assocs.' license with the Arkansas State Board of Collection Agencies means it meets at least one of the three prongs of the term "collection agency."[32]

Within one year immediately preceding filing this pleading, DNF Assocs. attempted to collect from Reygadas a financial obligation primarily for personal, family or household purposes, which therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5) and Ark. Code Ann. § 17-24-502(4), namely a debt over the purchase of a camera from Purchasing Power.[33]

Reygadas purchased a camera from Purchasing Power, an online retail catalog.[34] After purchasing the camera, a dispute arose between Reygadas and Purchasing Power about whether Purchasing Power actually delivered the camera to her.[35] Purchasing Power considered the Reygadas' account (the Account) in default and sold the Account to DNF Assocs.[36]

DNF Assocs. retained Michael A. Jacob, II and Jacob Law Group, PLLC, to collect on the Account from Reygadas through litigation.[37] On December 6, 2016, DNF Assocs. filed a civil action against Reygadas, alleging it was the holder in due course of the Account, that the Account

---

[32] Document 11, ¶ 42.

[33] Document 11, ¶ 43.

[34] Document 11, ¶ 44.

[35] Document 11, ¶ 45.

[36] Document 11, ¶ 46.

[37] Document 11, ¶ 47.

was in default, and that Reygadas owed DNF Assocs. $1,003.90 in Principle and Accrued Interest, $100.39 in attorney fees, and court costs of $185.00.[38] Attached to the debt collection complaint was an Affidavit of Schiavi, swearing Reygadas owed DNF Assocs. $1,003.90.[39]

Reygadas was served with the summons and complaint and retained undersigned counsel to defend her in the civil action.[40] Reygadas paid attorney fess to her counsel.[41] On January 30, 2017, Reygadas, through her attorney, moved to dismiss and served the motion to dismiss on DNF Assocs.' attorney via email through the Arkansas Judiciary's e-filing system and via U.S. Mail.[42]

On January 30, 2017, or soon thereafter, DNF Assocs. knew Reygadas was represented by counsel regarding the Account and her counsel's name, address, facsimile and email address.[43] The knowledge that Reygadas was represented by counsel is imputed to DNF Assocs. because its agents – Michael A. Jacob, II and Jacob Law Group, PLLC – had actual knowledge Reygadas was represented by counsel on the day these agents were served

---

[38] Document 11, ¶ 48, and Document 11-1.

[39] Document 11, ¶ 49, and Document 11-1.

[40] Document 11, ¶¶ 50-51 and Document 11-2.

[41] Document 11, ¶¶ 66 and 71.

[42] Document 11, ¶ 52 and Document 11-3.

[43] Document 11, ¶¶ 53-54.

with the motion to dismiss by email through the Arkansas Judiciary's e-filing system and by U.S. Mail a short time later.[44]

DNF Assocs. never filed an opposition to the motion to dismiss.[45] On January 4, 2018, the Circuit Court of Crawford County, Arkansas, entered an order granting Reygadas' motion to dismiss.[46]

After Circuit Court of Crawford County, Arkansas, dismissed the civil action DNF Assocs. filed against Reygadas, neither DNF Assocs., Radius Global Solutions, nor any other agent of DNF Assocs. ever contacted Reygadas' attorney regarding the Account.[47] Reygadas' attorney never consented that DNF Assocs., Radius Global Solutions, or any other agent of DNF Assocs. could ever contact Reygadas directly regarding the Account.[48]

DNF Assocs. then retained Radius Global Solutions to collect on the Account.[49] Even though DNF Assocs. knew Reygadas was represented by counsel, DNF Assocs. either instructed Radius Global Solutions to directly communicate with Reygadas to collect on the Account, or intentionally

---

[44] Document 11, ¶ 55.

[45] Document 11, ¶ 56.

[46] Document 11, ¶ 57 and Document 11-5.

[47] Document 11, ¶ 63.

[48] Document 11, ¶ 64.

[49] Document 11, ¶ 58.

withheld from Radius Global Solutions that Reygadas was represented by an attorney regarding the Account.[50]

On July 4, 2018, Radius Global Solutions sent Reygadas a collection letter,[51] which identified the current creditor as DNF Assocs LLC, the original creditor as Purchasing Power, and the balance due as $1,003.90.[52] The collection letter offered to "settle" the Account for two payments of $200.79, the first of which was due by July 25, 2018, and the second due 30 days from the first payment.[53] Reygadas received the collection letter at her home.[54]

## Argument & Authorities

To determine a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the complaint is construed in the light most favorable to the plaintiff, the complaint's allegations are taken as true, and all reasonable inferences that can be drawn from the pleading are drawn for the pleader.[55] A district court's inquiry into a motion to dismiss under Rule 12(b)(6) is simply whether the allegations constitute a statement of a claim for relief

---

[50] Document 11, ¶ 59.

[51] Document 11-6.

[52] Document 11, ¶ 60 and Document 11-6.

[53] Document 11, ¶ 61 and Document 11-6.

[54] Document 11, ¶ 62.

[55] *Dadd v. Anoka County*, 827 F.3d 749, 754 (8th Cir. 2016).

under Fed. R. Civ. P. 8(a).[56] In deciding a motion to dismiss, district court's must simply decide whether the plaintiff's claims are factually plausible and rise above mere speculation.[57]

## I. The Court should deny DNF Assocs.' motion to dismiss because Reygadas plausibly alleges that DNF Assocs.' principal business is collecting debts.

"The term 'debt collector' means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another"[58] The "principal purpose" prong (at issue here) and the "regularly collects" prong (not at issue here) provide language defining who is included in the term "debt collector," triggering most of the FDCPA's and AFDCPA's protection of consumers. Despite these two prongs inclusion in the same sentence, the "principal purpose" prong and the "regularly collecting" prongs provide separate paths to establish the FDCPA's and the AFDCPA's coverage as a "debt collector."[59]  The phrase

---

[56] *See Briehl v. General Motors Corp.*, 172 F.3d 623 (8th Cir. 1999).

[57] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L. Ed. 2d 929 (2007).

[58] 15 U.S.C. § 1692a(6) and Ark.. Code Ann. § 17-24-502(5)(A).

[59] *See e.g. Henson v. Santander Consumer USA, Inc.*, 817 F.3d 131, 136 (4th Cir. 2016) *aff'd* ____ U.S. ____, 137 S. Ct. 1718, 198 L. Ed. 2d 177 (2017); *Davidson v. Capital One Bank*, 797 F.3d 1309, 1316, n.8 (11th Cir. 2015); *James v. Wadas*, 724 F.3d 1312, 1317 (10th Cir. 2013); *Schlegal v. Wells Fargo Bank*, 720 F.3d 1204, 1208 (9th Cir. 2013); *Hester v. Graham, Bright & Smith*, 289 Fed. Appx. 35, 41 (5th Cir. 2008); *Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti*, 374 F.3d 56, 61 (2d Cir. 2004).

11

"owed or due another" modifies only the "regularly collects" prong and not the "principal purpose" prong.[60]

Since some entities could qualify as a "debt collector" under either prong, there has been relatively little case law defining the meaning of the "principal purpose" prong and little reason in define the FDCPA's coverage under the "principal purpose" prong. In 2017, however, the Supreme Court held that a debt buyer is not covered under the "regularly collects" prong of the definition of "debt collector," because the debts are owned by the debt buyer and not "owed or due another."[61] The Supreme Court explicitly stated that it was not addressing application of the FDCPA's alternative "principal purpose" definition, which was not at issue since it had not been presented by the parties and did not fall within the scope of its grant of review.[62] There has been increased litigation about the meaning of the "principal purpose" prong in litigation against debt buyers.

---

[60] *Tepper v. Amos Fin., L.L.C.*, 898 F.3d at 365 (3d Cir. 2018) ("'Any debts'….stands in contrast to 'debts owed or due…another,' which limits only the 'regularly collects' definition."); *Davidson v. Capital One Bank*, 797 F.3d 1309, 1316, n.8 (11th Cir. 2015) ("'principal purpose' not modified by 'owed or due another'"); *see also Schlegel v. Wells Fargo Bank*, 720 F.3d 1204, 1209 (9th Cir. 2013) ("This argument fails, because it would require us to overlook the word 'another' in the second definition of 'debt collector'").

[61] *Henson v. Santander Consumer USA, Inc.*, ____ U.S. ____, 137 S. Ct. 1718, 198 L. Ed. 2d 177 (2017).

[62] *Henson*, ____ U.S. ____, 137 S. Ct. 1718, 198 L. Ed. 2d 177 (2017); *see also* 898 F.3d at 371 (concluding that debt buyer defendant was a debt collector under principal purpose prong); *Skinner v. LVNV Funding*, 2018 WL 319320, *3-4 (N.D. Ill., Jan. 8, 2018) (concluding that "a debt purchaser can still qualify as a debt collector under § 1692a(6) if its principal purpose is the collection of debts"); *Mitchell v. LVNV Funding L.L.C.*, 2017 WL 6406594 (N.D. Ind., Dec. 15, 2017) ("*Henson* explicitly did not address the first prong in the definition of a debt collector").

Courts have considered a variety of types of information to determine the principal purpose of a business, including:

- Percent of business or its resources devoted to debt collection;[43]

- Percent of business's revenue derived from debt collection;[44]

- Percent of business's expenses related to debt collection;[45]

- How the business is registered or describes itself in official filings;[46]

- Number of collection lawsuits filed by business.[47]

---

[43] *See Tepper*, 898 F.3d at 368-69 (debt buyer admitted that its "sole business is collecting debts it purchased"); *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 404 (3d. Cir. 2000) (motion for summary judgment stated that defendant "exists solely for purpose of holding claims for delinquent taxes and municipal obligations"); *F.T.C. v. Check Investors, Inc.*, 502 F.3d 159, 174 (3d Cir. 2007) ("Check Investors acquired the defaulted checks only for collection purposes."); *Aubert v. Am. Gen. Fin., Inc.*, 137 F.3d 976, 978 (7th Cir. 1998) ("Along with providing collection services for AGFC credit card accounts, SBI provides a number of other services for AGFC accounts that are unrelated to debt collection.").

[44] *See Scott v. Jones*, 964 F.2d 314, 316 (4th Cir. 1992) ("We agree with the district court's conclusion that the 'principal purpose' of Jones' business was the collection of debts. Deposition testimony revealed that at least 70%-80% of Jones' legal fees were generated in relation to legal work performed toward the collection of debts."); *Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti*, 374 F.3d 56, 61 (2d Cir. 2004) (percentage of revenue derived from debt collection work is more pertinent to analysis under "principal purpose" prong than under "regularly collects" prong).

[45] *See Pavone v. Citicorp Credit Serv., Inc.*, 60 F. Supp. 2d 1040, 1047 (S.D. Cal. 1997) *aff'd*, 172 F.3d 876 (9th Cir. 1999) ("principal purpose" test not satisfied where less than one quarter of business expenses were for is debt collection operations).

[46] *Torres v. LVNV Funding, L.L.C.*, 2018 WL 1508535 (N.D. Ill., Mar. 27, 2018) ("LVNV holds a collection agency license from the State of Illinois"); *Chenault v. Credit Corp. Solutions, Inc.*, 2017 WL 5971727 (E.D. Penn., Dec. 1, 2017) (noting that defendant is registered as a collection agency in Utah); *Dorrian v. LVNV Funding, L.L.C.*, 94 N.E.3d 370 (Mass. 2018) (noting that in filings with the Secretary of the Commonwealth, LVNV described itself as a "purchaser of consumer debt and loans"); *see also Mitchell*, 2017 WL 6406594 (N.D. Ind., Dec. 15, 2017) (noting that Illinois Supreme Court "held LVNV to be subject to the state collection act").

[47] *See Dorrian v. LVNV Funding, L.L.C.*, 94 N.E.3d 370 (Mass. 2018) (noting number of lawsuits filed and reports sent to credit bureau).

13

Here, Reygadas explains DNF Assocs.'s business model, alleging that almost all of its business and resources are devoted to debt collection, almost all of its business revenue is derived from debt collection; and almost all of its business expenses are related to debt collection.[68]

And DNF Assocs.'s is a licensed collection agency as required by Arkansas law.[69] As part of its licensing application, its manager, Dave Maczka, certified he has over 20 years of experience in the debt collection industry and verified his knowledge of the Fair Debt Collection Practices Act during by attaching his results from an FDCPA compliance training course.[70]

Last, one DNF Assocs.'s owners and its managing member, actively participates in debt collection by providing affidavits asserting the amount consumers owe DNF Assocs.[71] These affidavits are attached to debt collection complaints by DNF Assocs. as the named plaintiff.[72] DNF Assocs.

---

[68] Document 11, ¶¶ 30-33.

[69] Ark. Code Ann. § 17-24-301 ("Unless licensed by the State Board of Collection Agencies under this subchapter it is unlawful to (1) Engage in the collection of delinquent accounts, bills, or other forms of indebtedness; (2) Use a fictitious name or any name other than their own in the collection of their own accounts receivable; (3) Solicit claims for collection; or (4) Purchase and attempt to collect delinquent accounts or bills.; *Simpson v. Cavalry SPV I, LLC*, 2014 Ark. 363, 440 S.W.3d 335 (holding that entity that purchased delinquent accounts and hired attorney to collect was collection agency required to be licensed).

[70] Document 11, ¶¶ 36-37.

[71] Document 11, ¶¶ 17-28.

[72] *Id.*

14

has filed 57 such debt collection lawsuits in Arkansas, and many more
across the country.[23]

## II.   The majority of courts have rejected DNF Assocs.' "passive debt buyer" argument.

While DNF Assocs. obtained a ruling in *McAdory v. M.N.S. & Assoc.*,
2017 WL 5071263 (D. Or., Nov. 3, 2017), that the complaint filed against it
did not plausibly allege it was a "debt collector" under the "principal
purpose" prong the case has been appealed to the Ninth Circuit.[24]  And, the
majority of courts, have concluded that debt buyers can be principal
purpose debt collectors, despite hiring third parties collect on their behalf:

- *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 403-404 (3d Cir. 2000) (assignee qualified as "principal purpose" debt collector under FDCPA even though separate entity carried out all collection activities).

- *Norman v. Allied Interstate, L.L.C.*, ____ F. Supp. 3d ____, 2018 WL 2383099 (E.D. Pa., May 25, 2018) (stating claim where alleged in complaint and supported by attached collection letter that another party was collecting on behalf of debt buyer);

- *Torres v. LVNV Funding, L.L.C.*, 2018 WL 1508535 (N.D. Ill., March 27, 2018) (noting that LVNV "pursued collection … by having its master servicing agent place the accounts with servicers" in concluding that LVNV is a principal purpose debt collector);

- *McMahon v. LVNV Funding, L.L.C.*, ____ F. Supp. 3d ____, 2018 WL 1316736 (N.D. Ill., March 14, 2018) ("The Court fails to see why it should matter if the debt buyer hires a third party to actually collect its debt, *i.e.* to be the one who interacts with the debtor to obtain payment. If the collection of debts is precisely what sustains the business, unaided by any other significant sources of revenue, then the 'collection of debts' must be the business's 'primary purpose.;");

---

[23] Document 11, ¶ 29.
[24] *See McAdory v. M.N.S. & Assocs., LLC*, Case No. 3:17-cv-777, Doc. 46 (D. Or., Oct. 30, 2018)

- *Mitchell v. LVNV Funding, L.L.C.*, 2017 WL 6406594 (N.D. Ind., Dec. 15, 2017) (concluding that "there exists a material factual dispute regarding LVNV's principal business activities" where plaintiff presented evidence of principal purpose and alleged that debt buyer had interactions with debtors when it sued them);

- *Barbato v. Greystone Alliance, L.L.C.*, 2017 WL 1193731, at *10 (M.D. Pa., Mar. 30, 2017), *reconsideration denied*, 2017 WL 1193731, at *10 (M.D. Pa. Oct. 19, 2017) *and reconsideration denied*, 2017 WL 5496047 (M.D. Pa., Nov. 16, 2017) (debt buyer's principal purpose was debt collection where it "refers all charged-off receivables to third-party, independent servicers" for collection);

- *Polanco v. NCO Portfolio Mgmt., Inc.*, 132 F. Supp. 3d 567 (S.D.N.Y. 2015) (NCO Portfolio, "through its lawyers[,] … filed and pursued the collections lawsuit against [the FDCPA] Plaintiff in its own name; in doing so, it acted principally as a 'debt collector' irrespective of the actions of NCOF [its collections affiliate].");

- *Thompson v. Resurgent Capital Serv., L.P.*, 2015 WL 148697 at *2 (N.D. Ala., Mar. 31, 2015) (finding defendant PYOD's principal purpose was collection of debts where "[its] entire *raison d'etre* is to act as a vessel for the assignment of defaulted debts formerly purchased by its parent, Sherman, for the sole purpose of facilitating efforts by Resurgent or other corporate affiliates to collect on PYOD's behalf");

- *Plummer v. Atl. Credit & Fin., Inc.*, 66 F. Supp. 3d 484 (S.D.N.Y.) (debtor sufficiently alleged principal purpose of assignee's business was debt collection where it used mails to purchase defaulted consumer debts and then sought to collect debts through another entity;

- *Sykes v. Mel Harris & Assoc.*, 757 F. Supp. 2d 413, 423 (S.D.N.Y. 2010), *aff'd* 780 F.3d 70 (2d Cir. 2015) (same).

Last, the Third Circuit is the only Court of Appeals to decide post-*Henson*, whether debt buyers, like DNF Assocs., are principal purpose debt collectors under the FDCPA, and affirmatively concluded debt buyers seeking to collect debt they purchase are debt collectors:

> The Act does not apply, however, to all entities who collect debts; only those whose principal purpose is the collection of debts, and those who regularly collect debts owed another, are subject to its proscriptions. Those entities whose principal purpose is to collect the defaulted debt they purchase seek to avoid the Act's reach. We believe such an entity is what is is—a debt collector.[25]

Based on the detail provided in the First Amended Complaint regarding how DNF Assocs. purchases debts, hires other debt collectors to collect the debt, obtained a collection agency license in Arkansas, and sues consumers in Arkansas and other states in its own name with debt collection complaints supported by its owner and managing member's affidavits, this Court should have little trouble concluding that Reygadas plausibly alleges DNF Assocs. is a debt collector under the principal purpose prong of the FDCPA and the AFDCPA.

### III. The Court should deny DNF Assocs.' motion to dismiss because she plausibly alleges DNF Assoc. knew she was represented by counsel but had Radius Global Solutions contact her about the debt anyway.

DNF Assocs. does not argue that it may contact consumers it knows to be represented by counsel. The plain language of the FDCPA and the AFDCPA prohibits contact of a consumer by a debt collector who knows the consumer is represented by an attorney regarding the debt:

---

[25] *Tepper* 898 F.3d at 365.

(a) Communication with the consumer generally—Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt—

(2) if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer[.][76]

Here, Reygadas alleges that DNF Assocs. knew she was represented by counsel. On January 30, 2017, Reygadas, through her attorney, moved to dismiss and served the motion to dismiss on DNF Assocs.' attorney via email through the Arkansas Judiciary's e-filing system and via U.S. Mail.[77] On January 30, 2017, or soon thereafter, DNF Assocs. knew Reygadas was represented by counsel regarding the Account and her counsel's name, address, facsimile and email address.[78] The knowledge that Reygadas was represented by counsel is imputed to DNF Assocs. because its agents – Michael A. Jacob, II and Jacob Law Group, PLLC – had actual knowledge Reygadas was represented by counsel on the day these agents were served

---

[76] 15 U.S.C. § 1692c(a)(2); *see also* Ark. Code Ann. § 17-24-504(a)(2).

[77] Document 11, ¶ 52, and Document 11-3.

[78] Document 11, ¶¶ 53-54.

with the motion to dismiss by email through the Arkansas Judiciary's e-filing system and by U.S. Mail a short time later.[79]

And it would make little sense for DNF Assocs. to contact Reygadas through Radius Global Solutions, unless it knew the debt collection litigation had concluded. Thus, it is plausible under the facts pled by Reygadas, the DNF Assocs. knew the debt collection litigation had ended, Reygadas was represented by counsel, but it wanted to try and collect the debt from Reygadas with her attorney's involvement – the result being the collection letter from Radius Global Solutions sent directly to Reygadas at DNF Assocs.' behest.

There is no requirement under the FDCPA nor the AFDCPA that the collector be formally notified of counsel's representation; informal information has been held sufficient.[80]

_____

[79] Document 11, ¶ 55.

[80] *See Horkey v. J.V.D.B. & Assoc., Inc.*, 333 F.3d 769 (7th Cir. 2003) (consumers need not provide § 1692c(a)(3) notices in legally precise fashion); *Buckley v. Afni, Inc.*, 133 F. Supp. 3d 1140 (S.D. Ind. Jan. 6, 2016) (rejecting collection agency's arguments that it could not associate consumer's collection accounts with attorney's letter because letter omitted her account numbers and referred to her previous married name as "aka" rather than "fka"; the court believed that the agency had enough information); *Miceli v. Orange Lake Country Club, Inc.*, 2015 WL 5081621 (M.D. Fla. Aug. 5, 2015); *Istre v. Miramed Revenue Group, L.L.C.*, 2014 WL 4988201 (E.D. Mo. Oct. 7, 2014) (phone notice acceptable); *Lassiter v. Integrity Solution Services, Inc.*, 2014 WL 1040677 (D. Colo. Mar. 18, 2014) (service of FDCPA suit on debt collector sufficient); *Backlund v. Messerli & Kramer, P.A.*, 964 F. Supp. 2d 1010 (D. Minn. Aug. 9, 2013) (phone notice acceptable); *Morrow v. Weinerman & Assoc.*, 2011 WL 4472651 (D. Minn. Sept. 26, 2011) (defendant's policy not to cease communication until receiving written notice of representation from the debtor or the attorney violated the FDCPA, which requires only knowledge of the representation and ability to ascertain the attorney's name and address; phone calls made to the consumer after the collector had been orally informed of attorney representation violated the FDCPA); *Day v. Am. Home Mortg. Serv.*, Inc., 2010 WL 2231988 (E.D. Cal. June 3, 2010) (no requirement that collector be informed of representation in writing); *Clayson v. Rubin & Rothman, L.L.C.*, 2010 WL 547476 (W.D.N.Y. Feb. 11, 2010) (nothing in FDCPA requires

But here, DNF Assocs. sued Reygadas by using its retained counsel, knowing full well that she might retain counsel to defend the lawsuit and that communication about the debt would be routed through its and Reygadas' counsel. DNF Assocs. was informed of Reygadas' representation in one of the most formal way possible – through service of a motion to dismiss its debt collection complaint on its retained counsel under the Arkansas Rules of Civil Procedure.

Reygadas' claim for violations of the FDCPA and the AFDCPA are not solely based on Radius Global Solutions contacting her and holding DNF Assocs. vicariously liable for the collection letter. Instead, she also plausibly alleges DNF Assocs. violated the FDCPA and the AFDCPA because it knew she was represented by counsel and either told Radius Global Solutions to contact her anyway or withheld from Radius Global Solutions she was represented by counsel knowing that Radius Global Solutions would contact her and demand payment, hopefully without Reygadas' counsel discovering. No other reasoning is plausible under the facts.

---

debtor to provide written notice to debt collector advising it of her legal representation); *Bianchi v. The Bureaus, Inc.*, 2008 WL 597587 (N.D. Ill. Feb. 27, 2008) (bankruptcy notice with information had been mailed to collector); *Tong v. Capital Mgmt. Services Group, Inc.*, 520 F. Supp. 2d 1145 (N.D. Cal. 2007) (consumer attorney's fax of his representation letter and collection letter were together sufficient); *Simmons v. Miller & Steeno, P.C.*, 2002 WL 31898324 (E.D. Mo. Dec. 30, 2002) (formal notice from consumer's attorney not required), vacated due to settlement, 2003 WL 255238 (E.D. Mo. Feb. 4, 2003).

Reygadas has plead a plausible violation of the FDCPA and the
AFDCPA for DNF Assocs.' communication with a consumer it knew was
represented by counsel.

## Conclusion

Reygadas shows the Court in her First Amended Complaint that DNF
Assocs. is a debt collector under the principal purpose prong of that term.
She also shows a plausible violation of the FDCPA and the AFDCPA – DNF
Assocs. knew she was represented by counsel, but it put a plan in motion to
entice Reygadas to "settle" her account outside the eyes and advice of her
retained and chosen attorney.

The Court should deny DNF Assocs.' motion to dismiss.

By:   /s/ Corey D. McGaha
      Corey D. McGaha
      Ark. Bar No. 2003047
      William T. Crowder
      Ark. Bar No. 2003138
      CROWDER MCGAHA, LLP
      5507 Ranch Drive, Suite 202
      Little Rock, AR 72223
      Phone (501) 205-4026
      Fax: (501) 367-8208
      cmcgaha@crowdermcgaha.com
      wcrowder@crowdermcgaha.com

## Certificate of Service

I certify that on December 4, 2018, I filed the foregoing using the
Court's CM/ECF system, which will notify and serve all attorneys of record
of the same.

                    /s/ Corey D. McGaha