UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

———————————————————————

STEPHANIE REYGADAS

                            Plaintiff,                     Case No. 2:18-cv-02184-PKH

v.

DNF ASSOCIATES, LLC

                            Defendant.

———————————————————————

### MEMORANDUM OF LAW IN SUPPORT OF DNF ASSOCIATES, LLC'S MOTION FOR SUMMARY JUDGMENT

Defendant DNF Associates, LLC ("DNF"), by and through its attorneys, Lippes Mathias Wexler Friedman LLP, submits this brief in support of its Motion for Summary Judgment pursuant to FED. R. CIV. P. 56(a).

### INTRODUCTION

On November 28, 2018, Plaintiff Stephanie Reygadas ("Plaintiff") filed an Amended Complaint against DNF alleging that DNF violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA") and the Arkansas Fair Debt Collection Practices Act, Ark. Code Ann. § 17-24-501, *et seq.* ("AFDCPA").   (Dkt. 11). As set forth in detail below, DNF has definitively established that it does not meet the statutory definition of "debt collector" as defined by the FDCPA and AFDCPA as a matter of law. The Declaration of David Maczka ("Maczka Dec."), Chief Compliance Officer of DNF, categorically establishes that DNF is a passive debt purchaser and does not engage in any collection activity.

The record is clear that DNF is merely a passive debt purchaser that did not take any steps to collect on Plaintiff's account. Specifically, DNF did not draft or send communication to Plaintiff, did not contact Plaintiff through any medium and did not exercise any direction or control over the purported collection activities that are the subject of the Amended Complaint. Maczka Dec., ¶ 5.

Finally, in the event the Court determines that DNF is a "debt collector," the Amended Complaint still must be dismissed because non-party Radius Global Solutions, LLC's ("RGS") did not violate the FDCPA or AFDCPA, and as a result, there is no violation for which DNF can be vicariously liable. The Declaration of Greg Stevens ("Stevens Dec."), Chief Compliance Officer of RGS, establishes that RGS had no actual knowledge that Plaintiff was represented by counsel, and thus could not violate the FDCPA and AFDCPA as alleged in the Amended Complaint. As a result, summary judgment should be granted in favor of DNF and the Amended Complaint should be dismissed in its entirety.

## PROCEDURAL HISTORY

On October 29, 2018, Plaintiff commenced this action against DNF alleging that DNF violated the FDCPA and AFDCPA. (Dkt. 1). On November 20, 2018, DNF moved to dismiss the complaint for failure to state a claim. (Dkts. 8, 9). On November 28, 2018, Plaintiff filed her Amended Complaint, rendering DNF's initial motion moot. (Dkt. 11). On December 4, 2018, Plaintiff filed her Opposition to DNF's initial motion to dismiss. (Dkt. 12). In opposing DNF's initial motion to dismiss, Plaintiff did not dispute that the "regularly collects" prong of the FDCPA's definition of "debt collector" inapplicable in this case, but only asserted that the "principal purpose" prong of this definition is at issue. (Dkt. 12, at p. 11).

On December 18, 2018, DNF moved to dismiss the Amended Complaint. (Dkts. 14, 15). On December 28, 2018, the Court issued a Text Order denying DNF's motion to dismiss the Amended Complaint, construing alleged facts and reasonable inferences in Plaintiff's favor. (Dkt. 22). On January 9, 2019, DNF filed its Answer. (Dkt. 23).

## FACTUAL BACKGROUND

Plaintiff's Amended Complaint alleges that DNF purchased Plaintiff's defaulted account from Purchasing Power, an online retail catalog. (Dkt. 11, ¶¶ 44, 46). After DNF purchased the account, it retained the Jacob Law Group, PLLC (the "Jacob Firm") to collect on the account. (Dkt. 11, ¶ 47.). The Jacob Firm filed a lawsuit in the Circuit Court of Crawford County, Arkansas, which was ultimately dismissed without prejudice. (Dkt. 11, ¶¶ 48; Maczka Dec., ¶ 9).

Plaintiff also alleges that DNF retained RGS after the aforementioned lawsuit to collect on the subject account. (Dkt. 11, ¶ 58). Plaintiff alleges that on July 4, 2018, RGS sent Plaintiff a collection letter, identifying DNF as the current creditor and Purchasing Power as the original creditor. (Dkt. 11, ¶ 60). As it relates to the instant action, the only allegations of misconduct that give rise to the alleged violations of the FDCPA and AFDCPA is that RGS communicated with Plaintiff when RGS purportedly knew she was represented by counsel. Despite these allegations, the record is devoid of any evidence that RGS had actual knowledge Plaintiff was represented by counsel.

Plaintiff alleges that DNF is a "debt collector" because it purchases defaulted accounts of consumer debt and then attempts to collect these debts via telephone calls, collection letters and suing consumers in its own name as plaintiff in debt collection lawsuits. (Dkt. 11, ¶ 12). The record is clear, however, that: (1) DNF never communicated with Plaintiff or attempted to communicate with Plaintiff; (2) DNF never sent any written communication to Plaintiff; (3) DNF never

participated in or otherwise exercised control over the collection process at any time or in any manner; and (4) DNF never took steps to collect on any account. *See* Maczka Dec., ¶¶ 3, 4, 5, 10, 11, 12. Said differently, DNF, itself, did not take any action to collect on Plaintiff's account at any time. The only collection activity directed at Plaintiff at issue came from RGS.

## ARGUMENT

### I.   Summary Judgment Standard

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The movant "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] ... which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

"Although the burden of demonstrating the absence of any genuine issue of material fact rests on the movant, a nonmovant may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial." *Wingate v. Gate County Sch. Dist., No. 34,* 528 F.3d 1074, 1078-79 (8th Cir. 2008). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

On a motion for summary judgment, "facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that

there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original).

Indeed, summary judgment should be granted "against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial." *In re Baycol Prods. Litig.,* 596 F.3d 884, 888–89 (8th

Cir. 2010) (quoting *Celotex Corp.,* 477 U.S. at 322).

## II.   Defendant DNF is Not a "Debt Collector" as Defined by the FDCPA

There are two ways a defendant can qualify as a "debt collector" under the FDCPA: (1)

where the defendant "uses any instrumentality of interstate commerce or the mails in any business

the principal purpose of which is the collection of any debts"; or (2) where the defendant "regularly

collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or

due to another."  15 U.S.C. § 1692a(6).  The Amended Complaint alleges that DNF qualifies as a

"debt collector" under the first statutory definition. (Dkt. 11 at ¶ 11, Dkt. 12 at p. 11).

The AFDCPA similarly defines the term "debt collector" as: "a person who uses an

instrumentality of interstate commerce or the mails in a business whose principal purpose is the

collection of debts or who regularly collects or attempts to collect, directly or indirectly, debts

owed or due or asserted to be owed or due another."  Ark. Code Ann. § 17-24-502(5)(A).  The

AFDCPA is "materially identical to the federal [FDCPA] definition of a debt collector."

*Silberstein v. Fed. Nat'l Mortg. Assocation*, 2017 WL 187165, at *2 (W.D. Ark. Jan. 17, 2017)

(citing *In re Humes*, 496 B.R. 557, 583 n. 24 (Bankr. E.D. Ark. 2013)).  Thus, Plaintiff's claim

that DNF violated the AFDCPA rises and falls with Plaintiff's FDCPA claim.

As an initial matter, in order for DNF to be held liable for the conduct of a third party debt

collector (in this case, RGS) under the FDCPA, the Plaintiff must prove that DNF also meets the

FDCPA's definition of debt collector.  *See e.g., Duhart v. LRAA Collections*, 652 Fed.Appx. 483,

484 (8th Cir. 2016); *Pettit*, 211 F.3d at 1059; *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325 (7th Cir. 2016) (while a debt collector can be liable for the acts of its agents, "[o]n the other hand, a company that is not a debt collector would not ordinarily be subject to liability under the Act at all") (citations omitted); *see also, Kasalo v. Trident Asset Mgmt., LLC*, 53 F. Supp.3d 1072, n.1 (N.D. Ill. 2014) (citing *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379 (3d Cir. 2000)); *Gold v. Midland Credit Mgmt., Inc.*, 82 F. Supp.3d 1064, 1072-73 (N.D. Cal. 2015).

A. **The Supreme Court's Decision in *Henson v. Santander* Establishes that Debt Purchasers such as DNF Do Not Meet the FDCPA's Second Definition of "Debt Collector"**

The United States Supreme Court addressed the issue of whether individuals and entities who purchase debts originated by someone else and then seek to collect those debts for their own account satisfy the FDCPA's definition of "debt collector." *See Henson v. Santander Consumer USA, Inc.*, 137 S.Ct. 1718, 1719 (2017). In its decision, the Court noted that there is no dispute that the term "debt collector" generally covers someone hired by a creditor to collect an outstanding debt and generally does not cover creditors who seek only to collect for themselves on loans they originated. *Id.*

Of importance to the present motion, the Supreme Court additionally determined that entities who purchase debts originated by someone else, who then seek to collect those debts for their own account, do not qualify as "debt collectors" under the second statutory definition of "any person . . . who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." *Id.* In reaching its decision, the Supreme Court expressly refused to consider the first statutory definition of "debt collector" – those engaged "in any business the principal purpose of which is the collection of any debts." *Id.* at 1721.

Pursuant to the Supreme Court's decision in *Henson*, passive debt buyers, such as DNF, can never qualify as a "debt collector" under the second prong of the statutory definition because it focuses "our attention on third party collection agents working for a debt owner – not on a debt owner seeking to collect debts for itself." *Id.* at 1721. Instead, DNF has retained RGS to collect on subject account owned by DNF. Maczka Aff., ¶ 10. Accordingly, the "regularly collects" definition of "debt collector" does not apply. Therefore, whether DNF is subject to the FDCPA and AFDCPA turns on the alternate, "principal purpose," definition of "debt collector."

**B.    DNF, a Passive Debt Buyer, Does Not Meet the Statutory Definition of Debt Collector**

       *i.    The Legislature Did Not Intend Debt Buyers Who Do Not Engage in Collection Activities to be Subject to the FDCPA*

The landscape of debt collection has changed since the FDCPA's enactment. One such change is the growth of debt buying. "No longer do creditors simply hire debt collectors to serve their named role; rather, with increased frequency creditors sell debt to purchasers, who may again resell the debt, hire outside debt collectors to undertake collection efforts, or attempt to collect on their own." *Tepper v. Amos Fin., LLC*, 898 F.3d 364, 366 (3d Cir. 2018) (*citing* Federal Trade Commission, The Structure and Practices of the Debt Buying Industry 1 (2013)). However, the FDCPA does not address whether a debt buyer is also a "debt collector."

Where a statute is ambiguous, the court should look to other persuasive authority, such as legislative history, to inform it of the Legislature's intent. *See Rote v. Zel Custom Mfg. LLC*, 816 F.3d 383, 392 (6th Cir. 2016) (internal citations omitted). The FDCPA was enacted in 1977 with the purpose of eliminating "abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively

disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 USC § 1692(e).

In enacting the FDCPA, the Senate Committee on Banking, Housing, and Urban Affairs described the nature and purpose of the Bill as: "to protect consumers from a host of unfair, harassing, and deceptive debt collection practices without imposing unnecessary restrictions on ethical debt collectors." S. Rep. 95-382, 95th Cong., 1st Sess., at *1 (1977). It is clear from the purpose of the legislation that Congress intended that the person or entity described as a debt collector under the proposed legislation engage in some form of improper conduct toward the consumer. It is also clear that Congress intended that the Bill regulate the conduct third parties acting on behalf of the principal creditor or debt owner. The Bill is completely silent on the obligations of creditors or debt owners who have no direct contact with the consumer in attempt to collect on debts owed to them. That is because the legislation was introduced due to the overarching concern that "debt collection abuse by third party debt collectors is a widespread and serious national problem," and not to regulate the owners of the debt. *Id.* at *2.

The Committee intended the term "debt collector" to:

> cover all third persons who regularly collect debts for others. The primary persons intended to be covered are independent debt collectors. The requirement that debt collection be done "regularly" would exclude a person who collects a debt for another in an isolated instance, but would include those who collect for others in the regular course of business.

*Id.* at *3. The Bill also contained a host of excluded persons or entities that collect debts for creditors. *Id.* Though debt buyers are not explicitly excluded, the common characteristic of the excludable entities is that the collector be acting for and on behalf of the creditor. In addition, it was Congress' express intent that the courts would have the ability to further prohibit conduct of

debt collectors not specifically addressed in the legislation. *Id.* at *4. Congress, however, did not expressly intend for the courts to modify who would be governed by the FDCPA.

The legislative history of the FDCPA demonstrates the goal was to clearly and expressly target abusive debt collection practices in connection with <u>communications and interactions with consumers</u>, including "obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process." S. Rep. No. 95–382, at *2 (1977) (emphasis added); s*ee also Dorrian v. LVNV Funding, LLC*, 479 Mass. 265, 272–73 (2018). As discussed above, the overarching purpose of the FDCPA is to govern "the <u>interaction</u> between a debt collector and consumer." *See McAdory v. M.N.S. & Assocs., LLC*, 2017 WL 5071263, *3 (D. Or. Nov. 3, 2017) *recons. denied* 2018 WL 1256482 (D. Or. March 11, 2018) (*appeal pending*) (emphasis added). "Given this, there is little to suggest that a company which only purchases debt and then contracts with a third party for all actual collection activity was considered by Congress when it was drafting the FDCPA." *Id.*

It is without question that Congress engaged in in-depth consideration of what entities should or should not be covered by the definition of a debt collector. Indeed, the FDCPA explicitly excludes certain entities from the definition of a debt collector. *See* H. Rep. No. 95-131, 95th Cong., 1st Sess., at *4 (1977). However, the FDCPA remained silent with regard to debt buyers. If the Congress intended to subject or exclude a debt buyer to the FDCPA, it would have done so.

California's Fair Debt Buying Practices Act ("FDBPA"), Cal. Civ. Code § 1788.50 *et seq.*, is instructive in this regard. In California, the Rosenthal Fair Debt Collection Practices Act (the "Rosenthal Act"), Cal. Civ. Code § 1788 *et seq.*, serves as the state corollary to the FDCPA with

the purpose of prohibiting debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts. *See, e.g.*, Cal. Civ. Code § 1788.1(2); *see also Heathman v. Portfolio Recovery Assocs., LLC*, 2013 WL 3746111, at *5 (S.D. Cal. July 15, 2013) (California has adopted a state version of the FDCPA, called the Rosenthal Act which mimics or incorporates by reference the FDCPA's requirements). Indeed, the Rosenthal Act "focuses more on the behavior of those collecting debt and the means that should be used to collect debt through mailers, phone calls, etc." California Bill Analysis, S.B. 233 Sen., 6/24/2013. Cognizant of the fact that a debt buyer was not subject to the Rosenthal Act, the California Legislature passed the FDBPA to govern the actions of debt buyers and establish a private right of action against a debt buyer who violates the provisions of the statute. California Bill Analysis, S.B. 233 Sen., 6/24/2013. Put differently, the California Legislature has taken it upon itself to close the gap in the Rosenthal Act through a separate statute governing the conduct of debt buyers.[1] Congress has not followed suit.

In *Dorrian*, the Massachusetts Supreme Court was faced with the same issue of whether the debt buyer defendant was a "debt collector" under the Massachusetts Fair Debt Collection Practices Act ("MDCPA"). *Dorrian*, 479 Mass. at 266. The court turned to the FDCPA, which was the model for the MDCPA, like the AFDCPA, for guidance as the legislative history of the MDCPA was not instructive. After detailing the legislative intent of the FDCPA, the court held that:

> Despite a careful consideration of what entities would be covered by the definition and what entities would be excluded, there is no

---

[1] Similarly, Colorado expanded the scope of the Colorado Fair Debt Collection Practices Act ("CFDCPA") to include debt buyers. Colo. Rev. Stat. Ann. § 5-16-103 (West); Amended by 2017 Colo. Legis. Serv. Ch. 285 (S.B. 17-216) § 3, eff. Jan. 1, 2018 (West). Under the current CFDCPA, a "'debt buyer' means a person who engages in the business of purchasing delinquent or defaulted debt for collection purposes, whether it collects the debt itself, hires a third party for collection, or hires an attorney for litigation in order to collect the debt. Debt buyers are collection agencies for the purposes of this article 16." Colo. Rev. Stat. Ann. § 5-16-103(8.5).

> evidence that Congress ever intended to include within this definition debt buyers that own the debts but use a third party to collect the debts and therefore have no contact with the debtors.

*Id.* at 273.  Further supporting this reasoning, the court looked to the Division of Banks, a state agency responsible for financial regulation, including the regulation of debt collection, for its position on the issue.  In an advisory opinion cited by the court, the Division of Banks defined a "passive debt buyer" as a "debt buyer that engages only in the practice of purchasing delinquent consumer debts for investment purposes without undertaking any activities to directly collect on the debt." *Id.* at 268.  The Division of Banks adopted this position because "passive debt buyers are investors in consumer debts that hire another duly authorized entity (either a Massachusetts-licensed debt collector or a Massachusetts attorney) to conduct the actual debt collection." *Id.* at 274 (citing Advisory Opinion No. O13020, Advisory Opinion No. O12012, and Advisory Opinion O06060).  The Division of Banks also submitted a letter, as *amicus curiae*, to the court affirming its position on debt buyers, which supported its practical perspective that many of its examination practices would be inapplicable to passive debt buyers that do not interact directly with consumers. *Id.* at 268-269.  The court addressed specifically whether the debt buyer defendant is a debt collector under the "principal purpose" prong of the FDCPA.  *Id.* at 271.  The court took the position that a debt buyer's business:

> is to invest in debt, usually those in default, and profit from the eventual collection of the debt. [ ] Nonetheless, the debt collection itself is entirely undertaken by third parties. [ ] In sum, the principal purpose of [the debt buyer defendant] is not perfectly clear.  [The defendant] itself is a debt buyer, not a debt collector, but the success of its business model is dependent on debt collection by its licensed contractor.

*Id.* at 271-272.  This reasoning follows the First Circuit's position in *Pilalas v. Cadle Co.*, 695 F.3d 12 (1st Cir. 2012).  In *Pilalas*, the court held that "passive receipt does not involve the vices

of harassment that the statute aims to suppress" and therefore the debt buyer was not subject to the MDCPA unless it had engaged in unlawful collection activity prior placing the debt with a third party for collection. *Pilalas*, 695 F.3d at 16.

DNF's inclusion in this lawsuit illustrates a fundamental gap in the plain language of the FDCPA. Debt buyers are not included in the definition of a "debt collector," but they are not explicitly excluded. As a result, ambitious plaintiffs have taken full advantage of that ambiguity to strain credulity with their allegations and shoehorn debt buyers into FDCPA liability. Plaintiff should not be permitted to capitalize on this ambiguity and absent clear direction to the contrary from Congress. There is no basis for including debt buyers, such as DNF, in the definition of debt collector under the FDCPA where the debt buyer has no contact with the consumer. Doing so only continues to expand the FDCPA beyond its enacted purpose. As aptly put by Judge Cogan, District Court Judge for the Eastern District of New York:

> We have drifted quite far from the truly awful collection practices –
> threatening violence, disclosing a consumer's personal affairs to
> others, impersonating public officials—that prompted Congress to
> enact the FDCPA. We are no longer deterring collection companies
> from abusing, tricking, and misleading debtors into making
> payments that they do not have to or would not want to make if they
> had the relevant facts. The courts are to some extent simply
> burdening the collection industry with a continuing portfolio of
> litigation that potentially raises the cost of credit for all consumers.

*Islam v. Am. Recovery Serv. Inc.*, 2017 WL 4990570, at *3 (E.D.N.Y. Oct. 31, 2017).

*Dorrian* provides insight and clarity into the seemingly unresolved issue of whether a debt buyer is a debt collector governed by the FDCPA. Several District Courts have tried to fit the square peg into the round hole and held that debt buyers are debt collectors because debt buyers do not originate the debt and more closely resemble debt collectors than creditors, therefore subjecting them to FDCPA liability. *See, e.g., Norman v. Allied Interstate, LLC*, 2018 WL

2383099 (E.D. Pa. May 25, 2018); *Torres v. LVNV Funding, LLC*, 2018 WL 1508535 (N.D. Ill. Mar. 27, 2018); *McMahon v. LVNV Funding, LLC*, 2018 WL 1316736 (N.D. Ill. Mar. 14, 2018); *Mitchell v. LVNV Funding, LLC*, 2017 WL 6406594 (N.D. Ind. Dec. 15, 2017); *Polanco v. NCO Portfolio Mgmt., Inc.*, 132 F. Supp.3d 567 (S.D.N.Y. 2015); *Plummer v. Atl. Credit & Finance, Inc.*, 66 F. Supp.3d 484 (S.D.N.Y. 2010). The above cases, however, merely state the purpose of the FDCPA in their preambles, but fail to address the debt buyers' status in the context and statutory scheme of the FDCPA. The suggestion, however, that a passive debt buyer, who has no interaction with the consumer whatsoever like DNF, can be liable under the FDCPA is completely inapposite to the purpose of the legislation.

It is anticipated that Plaintiff will rely on the recent decision *Barbato v. Greystone Alliance, LLC*, ___ F.3d ___, 2019 WL 847920 (3d Cir. Feb. 22, 2019) where the Third Circuit held that debt buyers are debt collectors under the FDCPA's first prong of the definition. While the Third Circuit does address the debt buyer's status in the context of the statutory scheme of the FDCPA, the court's reasoning is flawed for two reasons. First, in addressing the statutory interpretation of the definition, the court rejected the debt buyer's argument that collection requires action, i.e. the interaction with the consumer in collecting or attempting to collect a debt. *Barbato*, 2019 WL 847920 at *6. The court acknowledged that collection is defined as "the act or process of collecting," but, instead, opted to look to the alternative definition "that which is collected." *Id.* The phrase "collection of debt," however, requires the word "collection" to be read as an act in the context of the entire phrase "the principal purpose of which is the collection of any debts." To demonstrate from a different perspective, the principal purpose of a teacher is to educate, the principal purpose of a boxer is to fight and the principal purpose of a waiter is to serve food. Thus, defining someone's or a business' principal purpose requires an action.

Second, and more importantly, the court in *Barbato*, itself, has improperly stepped into the shoes of Congress and defined debt buyer. DNF does not dispute the interpretation of "debt collector" is intended to have a broad reach to include persons or entities that do not fit the generic definition of debt collector, however, the Third Circuit is rewriting the statute to cover persons and businesses not contemplated by Congress. "[W]e cannot rewrite the statute to be what it is not. Although this Court will often strain to construe legislation so as to save it against constitutional attack, it must not and will not carry this to the point of perverting the purpose of the statute or judicially rewriting it." *National Federation of Independent Business v. Sebelius*, 567 U.S. 519, 662 (2012) (internal quotation omitted).

While the Third Circuit's decision acknowledges that debt buyers are distinct from the person or entity that directly collects or attempts to collect the debt (*Barbato*, 2019 WL 847920 at *1), the Third Circuit, however, categorically classified debt buyers as debt collectors because, in its opinion, debt buyers are "far more like a repo man than a creditor." *Id.* at *7. In reaching that conclusion, the court attempted to justify its reasoning that "if the purpose of the statute was to reach repo men, that purpose is furthered by recognizing [the debt buyer] as a debt collector under § 1692a(6)" because the debt buyer has no incentive to maintain good will among consumers. *Id.* Despite the Third Circuit determining that the statute was not clear (*Id.* at * 6), the court arrived at its end without addressing the means by which it was reached, and did not address Congress' intent when aligning debt buyers with debt collectors. As debt buyers are not included or excluded from the definition of debt collector, the court has taken the task upon itself to legislate and define a debt buyer.

As demonstrated above, certain state legislatures have recognized the shift in the consumer debt industry and acted accordingly. It is incumbent that Congress address the change in the

consumer debt industry, if it sees fit to expand the FDCPA's purpose regulating a debt collector's conduct when interacting with the consumer. Congress "put specific limitations on the definition of 'debt collector' in § 1692a(6), implying that Congress knew the prohibitions of the FDCPA did not reach all who might be in a position to engage in the egregious practices with respect to collection of a debt." *Jordan v. Kent Recovery Services, Inc.*, 731 F.Supp. 652, 659 (D. Del. 1990) (citation and quotation omitted). "Furthermore, the numerous exceptions to the definition of 'debt collector' implies that Congress knew the difference between the terms it employed." *Id.* Congress, however, has remained silent on the issue of whether a debt buyer is subject to FDCPA liability unlike its state counterparts. "Such a conclusion is consistent with the legislative history, which reveals that Congress did not intend to leave the term 'debt collector' open to elastic interpretations." *Id.*

ii.     *DNF's Principal Purpose is Debt Buying*

When a party only owns an account, does not take affirmative action to collect on the account and contracts with a third-party for collection efforts, it cannot meet the first prong of the statutory definition of debt collector – that its principal business purpose is the collection of debts. *See Schneider v. JTM Capital Management, LLC*, 2018 WL 2276238 (D. Or. Mar. 22, 2018) adopted by 2018 WL 2248451 (D. Or. May 15, 2018) (dismissing the complaint against the debt buyer defendant on the basis that it does not meet the FDCPA's definition of debt collector because it takes no affirmative action to collect on those accounts); *McAdory,* 2017 WL 5071263; *Gold*, 82 F. Supp.3d 1064 (N.D. Cal. 2015); *Bank of New York Mellon Tr. Co. N.A. v. Henderson*, 862 F.3d 29, 34 (D.C. Cir. 2017) (granting summary judgment where there was no evidence presented to indicate that the defendant's principal purpose was debt collection); *Kasalo*, 53 F. Supp.3d 1072 (N.D. Ill. 2014); *see also McCready v. eBay, Inc.*, 453 F.3d 882, 889 (7th Cir. 2006) ("[t]o be a

15

'debt collector' under the FDCPA entails engaging in some affirmative conduct with regard to collecting a debt"); *Grier v. Simmons & Clark Jewelers*, 2012 WL 1247171 (E.D. Mich. Feb. 17, 2012) (a creditor does not become a debt collector simply because it hires a debt collector to collect its debts); *Challenger v. Experian Info Solutions, Inc*., 2007 WL 895774, *2 (D. N.J. Mar. 22, 2007) (a creditor can place the debts it owns in collections without becoming a debt collector itself); *Kloth v. Citibank (S.D.)*, 33 F. Supp.2d 115, 119 (D. Conn. 1998) (Citibank is not a debt collector under the FDCPA merely because it retains a collection agency to collect its debts). Under this line of cases, the common factor in excluding these entities from the FDCPA definition of debt collector is the absence of any interaction with the consumer/debtor.  Thus, where there is no affirmative conduct of an entity in the collection of a debt it owns, the principal purpose of that entity cannot be said to be the collection of debts.  This follows the language set forth in the first prong of the definition of "debt collector:"

> The pertinent portion of § 1692a(6) defines "debt collector" as an entity "*the* principal purpose of which is the [collection of any debts]."  Not "*a* principal purpose of which," but "*the* principal purpose of which."  Congress's use of the definite article to modify "principal purpose" means that Congress intended to cover only entities having *one* principal purpose, that of [collecting debts].

*Hunte v. Safeguard Properties Mgmt, LLC*, 255 F.Supp.3d 722, 726 (N.D. Ill. 2017) (emphasis in original); *see also Rumsfeld v. Padilla*, 542 U.S. 426, 434-35 (2004); *Am. Bus. Ass'n v. Slater*, 231 F.3d 1, 4-5 (D.D.C. 2000) ("it is a rule of law well established that the definite article 'the' particularizes the subject which it precedes. It is a word of limitation as opposed to the indefinite or generalizing force of 'a' or 'an.'") (internal citation omitted).  Ultimately, purchasing debt for the purpose of profiting from it in some way, be it selling the debt to another debt buyer or retaining a debt collector or law firm to engage in collection efforts, falls outside the purview of the FDCPA, which seeks to protect consumers from abusive collection practices.  The Court in

*Schneider* articulates the rationale best, stating "the definition of 'debt collector' does not include purely passive debt purchasing activity. As defense counsel noted at oral argument, 'collect' is a verb that requires action." *Schneider*, 2018 WL 2276238 at *5.

The cases cited in Part *II.B.i., supra,* where debt buyer-defendants were held to be debt collectors under the FDCPA are readily distinguishable from the instant case. At the outset, *Norman* and *Plummer* address the sufficiency of pleading on a motion to dismiss and do not discuss the merits of their respective cases on the facts regarding whether those debt buyers were found to be "debt collectors" under the FDCPA. *See generally Norman*, 2018 WL 2383099; *Plummer*, 66 F.Supp.3d 484. In *Polanco*, which is a pre-*Henson* case, the court determined that the debt buyer defendant was essentially the same entity as its affiliate debt collection company and therefore was also a debt collector, noting that the defendant made no argument asserting that it was separate and distinct from its debt collection affiliate. *Polanco*, 132 F.Supp.3d at 581. In *Torres*, the court denied summary judgment on the basis that the debt buyer only argued that it was not a debt collector under the FDCPA on *Henson* grounds, but failed to address the "principal purpose" prong of the definition. *Torres*, 2018 WL 1508535 at *4-5. In *Mitchell*, the court found that filing lawsuits are considered interactions with debtors. *Mitchell*, 2017 WL 6406594 at *6 (also noting that the defendant did not explain how a lawsuit is not considered an interaction). That principle, however, has been rejected by *Dorrian*, citing the legislative history of the FDCPA, where the Massachusetts Supreme Court reasoned that "there is no evidence that Congress ever intended to include within this definition [of 'debt collector'] debt buyers that own the debts but use a third party to collect the debts and therefore have no contact with the debtors." *Dorrian*, 479 Mass. at 273; *see also McAdory*, 2018 WL 1256482 at *3 ("the lawsuits filed in an effort to collect on the debts purchased and owned by DNF are just a different form of collection activity which DNF

hires third party attorneys to perform. While the lawsuits are brought in DNF's name because it is the owner of the debt, DNF itself is not 'interacting' with the debtor because it is not executing the litigation activities").

Finally, the court in *McMahon* stated in denying summary judgment for the debt buyer, "[t]he Court fails to see why it should matter if the debt buyer hires a third party to actually collect its debt, *i.e.*, to be the one who interacts with the debtor to obtain payment. If the collection of debts is precisely what sustains the business... then the 'collection of ...debts' must be the business's 'primary purpose.'" *McMahon*, 301 F. Supp.3d at 884. This is the fundamental flaw in the *McMahon* court's decision, and it completely undercuts the court's introduction to the discussion where it outlines the general principles of the FDCPA, i.e. "to eliminate abusive debt collection practices, to ensure that debt collectors who abstain from such practices are not competitively disadvantaged, and to promote consistent state action to protect consumers." *Id*. at 871 (citation omitted). This premise was recognized by the court in *McAdory* when it dismissed the FDCPA claims against DNF holding that the FDCPA does not apply because DNF does not interact with consumers and therefore fell outside Congress' intended purpose of the FDCPA. *McAdory*, 2017 WL 5071263 at *3.

As discussed in detail above, a debt buyer who does not take any affirmative action to collect on the accounts it purchases, but rather contracts with a third-party for collection efforts, cannot meet the "principal purpose" prong of the definition of "debt collector." Debt buyers, such as DNF, have no interaction with consumers the FDCPA is intended to protect, and therefore, debt collection cannot be *the* principal purpose of the debt buyer's business.

###### C.     DNF's "Principal Purpose" is Not Debt Collection as a Matter of Law

The record is clear that DNF does not communicate with consumers or participate in collection activities of the debts it owns, in any respect. Summary judgment is warranted because the facts do not support the conclusion that DNF's principal purpose is debt collection, as a matter of law.  *See McAdory*, 2017 WL 5071263 at \*3 ("The fact that a [debt purchasing] business *benefits* from the collection of debt by an entirely separate third party does not necessarily make the principal purpose of that business the collection of those debts").

Where a purchaser of debt retains a third-party to engage in collection activities but does not undertake any collection activity itself, the debt purchaser does not meet the "principal purpose" definition of "debt collector" under the FDCPA.  *See McAdory*, 2017 WL 5071263 at \*2; *Schneider*, 2018 WL 2276238 at \*5; *Gold*, 82 F. Supp. 3d at 1071-73; *Kasalo*, 53 F. Supp.3d at 1078-79.  Furthermore, the retention of a law firm to engage in collection efforts by filing lawsuits is not sufficient to establish that DNF is a debt collector.  *See McAdory*, 2018 WL 1256482 at \*3; *Dorrian*, 479 Mass. at 274 ("passive debt buyers are investors in consumer debts that hire another duly authorized entity (either a [ ] licensed debt collector or [an] attorney) to collect on the actual debt").

In addition to the general allegations that DNF purchases defaulted accounts and then attempts to collect on the account via telephone calls, letters, and lawsuits, Plaintiff alleges that DNF participates in the debt collection process by directing the terms and amounts of payment by consumers, and DNF's business is devoted to debt collection. (Dkt. 11, ¶¶ 12, 18, 30). The evidence, however, unequivocally establishes that DNF does not participate in debt collection. Here, DNF does not communicate with, draft or send notices to consumers, and did not in this case. Maczka Dec., ¶¶ 3, 5. DNF does not exercise any control over the third party debt collectors

with whom it contracts, including RGS. Maczka Dec., ¶ 4. Moreover, DNF hired duly authorized entities, the Jacob Firm and RGS, to engage in debt collection activities related to Plaintiff's account. Maczka Dec., ¶¶ 8, 10.

Furthermore, Plaintiff improperly attempts to interpose RGS's business purpose, i.e. the collection of debt, onto DNF to support the assertion that DNF's business is devoted to debt collection. *See Gold*, 82 F. Supp.3d at 1071 ("There is no evidence to suggest that [the defendant's] business is debt *collection*. Rather, Plaintiff would have the Court fill the gap with an inference that because [the defendant] is in the business of acquiring defaulted debt, it must therefore be in the business of collecting on those debts."). In light of the analysis in Part *II.B., supra*, and the evidence on the record, DNF's principal purpose cannot be said to be debt collection such that it can be held vicariously liable, or otherwise, for RGS's alleged violations of the FDCPA.

In addition, the fact that DNF holds a license issued by the State of Arkansas to engage in debt collection has no bearing regarding this Courts analysis of whether DNF is a debt collector under the FDCPA and AFDCPA when DNF had no contact with Plaintiff whatsoever. *See McAdory*, 2018 WL 1256482 at *2-3 (Finding that many states expressly require debt buyers to obtain licenses, which does not impact the analysis under completely distinct definitions of debt collector). Pursuant to Arkansas law, a debt purchaser is required to be licensed *only* if the accounts it purchases were in default or delinquent at the time of acquisition. *See* Ark. Code § 17-24-102(a)(10). Here, DNF has complied with state law for the sole purpose of acquiring delinquent accounts in originated in Arkansas. That, however, does nothing to change the fact that DNF did not communicate with Plaintiff or take any other affirmative collection action on its own. Instead, DNF retained a law firm and collection agency to engage in all of the collection efforts with respect to Plaintiff's account. Maczka Dec., ¶¶ 8, 10. *See McAdory*, 2018 WL 1256482 at *3 (hiring a

20

third party to collect on a debt does not make debt collection the principal purpose of the DNF, and rejecting the argument that DNF had a state "debt collector" license made it a debt collector under the FDCPA).

## III.   DNF Cannot Be Liable for RGS's Actions

Plaintiff seeks to hold DNF liable for RGS's actions with regard to contacting Plaintiff via one letter despite DNF's purported knowledge that she was represented by an attorney.  While it is generally accepted that one debt collector may be held liable for the debt collection activities carried out on behalf of another debt collector, there are no facts in dispute to impute liability for RGS's actions onto DNF. *See generally Pollice*, 225 F.3d 379.

First and as discussed throughout this Memorandum of Law, DNF is not a debt collector and therefore the FDCPA and AFDCPA do not apply to DNF as a matter of law. Second, Plaintiff's theory of liability is not supported by any facts to impute liability onto DNF, namely, that RGS had actual knowledge that Plaintiff was represented by an attorney or should be liable for any of RGS's conduct.  *See Schmitt v. FMA Alliance*, 398 F.3d 995 (8th Cir. 2005); *Randolph v. IMBS, Inc.*, 368 F.3d 726, 729 (7th Cir. 2004) (creditor's knowledge is not imputed to debt collectors); *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103 (6th Cir. 1996); *Bowen v. Ditech Financial LLC*, 2017 WL 4158601 at *15 (D. Maine Sept. 19, 2017); *Lynch v. Nelson Watson & Associates, LLC*, 2011 WL 2472588 at *4 (D. Kan. June 21, 2011) (citing *Schmitt v. FMA Alliance*, 398 F.3d 995, 997 (8th Cir. 2005)); *Shelley v. Ocwen Loan Servicing, LLC*, 2013 WL 4584649 (S.D. Ind. 2013) (rejecting debtor's argument that notice of refusal to pay provided to original creditor is imputed to debt collector); *Heath v. Jonathan C. Frank & Associates*, No. 8:2018-cv-01187 (M.D. Fla. Dec. 28, 2018) ECF No. 32 (conclusory allegation that the debt buyer authorized the debt

collector it retained to collect an alleged debt was insufficient to establish a claim of vicarious liability)[2].

Plaintiff alleges that DNF retained RGS to collect on the account, and that DNF "either instructed [RGS] to directly communicate with Reygadas to collect on the Account, or withheld from [RGS] that Reygadas was represented by an attorney regarding the Account." (Dkt. 11 at ¶¶ 58-59).  It is well established, however, that in order to trigger liability, a plaintiff must prove actual knowledge to demonstrate that a debt collector knows the consumer is represented by an attorney.  *Schmitt*, 398 F.3d at 997; *see also Torres*, 2018 WL 1508535 at *6.

In *Schmitt*, the plaintiff retained an attorney regarding an underlying debt with a bank who sent the bank two notices advising it of the plaintiff's representation, bankruptcy rights, and that the bank should advise its debt collectors of the representation. *Schmitt*, 398 F.3d at 996. After receipt of the notices, the bank transferred the plaintiff's account to the defendants for collection who sent a letter directly to the plaintiff without notifying the defendants of the plaintiff's representation by counsel. *Id*. The plaintiff claimed that the defendant's liability was based on the theory of a creditor's actual knowledge of a debtor's representation is imputed to its agent. *Id*. at 997. In determining that actual knowledge is required, the court relied on the premise that implied knowledge, in the context of the FDCPA, contradicts agency law, stating "while the knowledge of the agent is imputed to the principal, the converse is not true." *Id.* (citing *S.O.G.-San Ore-Gardner v. Mo. Pac. R.R. Co.*, 658 F.2d 562, 567 (8th Cir. 1981) (an agent cannot be imputed with information which the principal failed to disclose)); s*ee also Messick v. Messerli & Kramer, P.A.*, 2016 WL 1180169 (D. Minn. Mar. 25 2016); *Randolph, supra*; *Lynch, supra* (FDCPA requires

---

[2] Attached for the Court's convenience as Exhibit A is a copy of the Order in *Heath v. Jonathan C. Frank & Associates*.

actual knowledge that the consumer was represented by counsel and Plaintiff failed to produce any evidence that defendant actually knew plaintiff was represented by counsel).

Similarly, here, DNF's knowledge is not imputed onto RGS, the debt collector who *actually* communicated with Plaintiff. Regardless of whether DNF knew Plaintiff was represented by an attorney, the fact that RGS sent one letter to Plaintiff, in and of itself, does not constitute a violation of § 1692c(a)(2) because RGS had no prior knowledge that Plaintiff was represented by an attorney. Stevens Dec. ¶ 7. Logically, if RGS did not violate the FDCPA, then DNF could not have violated the FDCPA either. The record demonstrates that RGS had no actual knowledge that Plaintiff was represented by an attorney when RGS sent the letter to Plaintiff. *See* Maczka Dec., ¶¶ 11, 12; *see also* Stevens Dec., ¶ 7. Therefore, and in addition to the conclusion that DNF is not a debt collector and the FDCPA and AFDCPA do not apply, it is clear that RGS had no knowledge that Plaintiff was represented by an attorney when it contacted her via one letter sent on July 4, 2018. Likewise, there is no evidence in the record to support Plaintiff's claim that DNF violated 15 U.S.C. §§ 1692d, 1692e, and1692f and Ark. Code. Ann. §§ 17-24-505, 17-24-506(a), and 17-24-507(a). Accordingly, summary judgment should be granted in favor of DNF and the Amended Complaint should be dismissed.

## CONCLUSION

As set forth above, Plaintiff's allegations that DNF is a debt collector fails as a matter of law.  DNF does not meet the statutory definition of debt collector and cannot be held liable for the violations of the FDCPA and AFDCPA alleged in the Amended Complaint. Moreover, despite the allegations that DNF directed RGS to communicate directly with Plaintiff while she was represented by an attorney, the record is clear that RGS lacked actual knowledge that Plaintiff was represented by counsel and did not violate the FDCPA. Thus, the allegations that DNF is

vicariously liable for alleged violations of the FDCPA and AFDCPA are not supported by the record. Accordingly, DNF's motion for summary judgment should be granted and the Amended Complaint should be dismissed with prejudice.

DATED:        March 15, 2019

LIPPES MATHIAS WEXLER FRIEDMAN LLP

s/ Brendan H. Little
Brendan H. Little, Esq.
Attorneys for Defendant DNF Associates, LLC
50 Fountain Plaza, Suite 1700
Buffalo, NY 14202
T: 716-853-5100
F: 716-853-5199
E: blittle@lippes.com