In the United States District Court
Western District of Arkansas
Fort Smith Division

Stephanie Reygadas                                                                    Plaintiff

v.                              Case No. 2:18-cv-02184-PKH

DNF Associates, LLC                                                                Defendant

**Plaintiff's Opposition to Defendants' Motion for Summary Judgment**

Since, the Court denied DNF Associates, LLC's motion to dismiss Reygadas complaint, the Third Circuit in *Barbato v. Greystone Alliance, LLC*, rejected the oft-cited but seldom followed "passive debt buyer" argument these types entities are not "primary purpose" debt collectors under the FDCPA.[1] This Court should follow the Third Circuit's lead because Reygadas has raised a genuine issue of material fact the DNF Associates, LLC is a debt collector under the FDCPA.

And when Congress created the FDCPA, it legislated against a legal backdrop of ordinary agency laws and intended the FDCPA to incorporate such rules. Under this reasoning, Reygadas shows how the Jacob Firm's knowledge that Reygadas was represented by counsel is imputed to DNF Associates, LLC – the principal that trusted these agents to sue Reygadas to collect the debt. Once that knowledge is imputed to DNF it had to inform Radius Global Solutions of Reygadas' representation, or it bore liability under the FDCPA.

---

[1] *Barbato v. Greystone Alliance, LLC*, 916 F.3d 260 (3d Cir. 2019).

**Argument and Authorities**

Although summary judgment is proper where there is no genuine issue of material fact, this is not a case in which the Court should grant summary judgment to DNF.[2]

A defendant who seeks summary judgment on a plaintiff's claim must demonstrate the absence of a genuine dispute of material fact by either (1) submitting summary-judgment evidence that negates the existence of a material element of the plaintiff's claim or (2) showing there is no evidence to support an essential part of the plaintiff's claim.[3] Defendants cannot rely on conclusory statements to establish that plaintiff has not presented evidence on an essential element of his claim. Rather, Defendants must demonstrate the absence of a genuine factual dispute.[4] Only if Defendants meet their burden is a plaintiff required to respond by summary judgment proof to show a genuine dispute of material fact.[5]

In determining whether a genuine dispute of material fact prevents summary judgment, a court must consider all evidence in the light most favorable to the plaintiff as the nonmovant.[6] The court must resolve all reasonable doubts about the facts for the plaintiff as the nonmovant.[7]

---

[2] Fed. R. Civ. P. 56(a); *see Scott v. Harris*, 550 U.S. 372, 380 (2007); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[3] *See Bedford v. Doe*, 880 F.3d 993 (8th Cir. 2018).

[4] *Celotex Corp.*, 477 U.S. at 322-23.

[5] *See* Fed. R. Civ. P. 56(e)(3).

[6] *See Leonetti's Frozen Foods, Inc. v Rew Marketing, Inc.*, 887 F.3d 438 (8th Cir. 2018).

[7] *See Sisney v. Kaemingk*, 886 F.3d 692 (8th Cir. 2018).

Reygadas must prove these essential elements of the Fair Debt Collection Practices Act and the Arkansas Fair Debt Collection Practices Act:

(1) the plaintiff is a consumer or person protected by the FDCPA and the AFDCPA[8],

(2) the debt being collected is a consumer debt[9],

(3) the defendant is a debt collector or other person subjected to the FDCPA and the AFDCPA[10], and

(4) a violation of one of the FDCPA's and the AFDCPA's requirements.[11]

Defendants' move for summary judgment on the third and fourth elements of these claims.

## I. Reygadas has shown a genuine issue of material fact that DNF is a debt collector.

"The term 'debt collector' means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another"[12] The "principal purpose" prong (at issue here) and the "regularly collects" prong (not at issue here) provide language defining who is included in the term "debt collector," triggering most of the FDCPA's and AFDCPA's protection of consumers. Despite these two prongs inclusion in the same sentence, the

---

[8] 15 U.S.C. § 1692a(3) and Ark. Code Ann. § 17-24-502(2).

[9] 15 U.S.C. § 1692a(5) and Ark. Code Ann. § 17-24-502(4).

[10] 15 U.S.C. § 1692a(6) and Ark. Code Ann. § 17-24-502(5)(A).

[11] 15 U.S.C. §§ 1692b-1692j and Ark. Code Ann. §§ 17-24-503 - 17-24-512.

[12] 15 U.S.C. § 1692a(6) and Ark.. Code Ann. § 17-24-502(5)(A).

"principal purpose" prong and the "regularly collecting" prongs provide separate paths to establish the FDCPA's and the AFDCPA's coverage as a "debt collector."[13] The phrase "owed or due another" modifies only the "regularly collects" prong and not the "principal purpose" prong.[14]

Since some entities could qualify as a "debt collector" under either prong, there has been relatively little case law defining the meaning of the "principal purpose" prong and little reason in define the FDCPA's coverage under the "principal purpose" prong. In 2017, however, the Supreme Court held that a debt buyer is not covered under the "regularly collects" prong of the definition of "debt collector," because the debts are owned by the debt buyer and not "owed or due another."[15] The Supreme Court explicitly stated that it was not addressing application of the FDCPA's alternative "principal purpose" definition, which was not at issue since it had not been presented by the parties and did not fall within the scope of its grant of review.[16]

---

[13] *See e.g. Henson v. Santander Consumer USA, Inc.*, 817 F.3d 131, 136 (4th Cir. 2016) *aff'd* ____ U.S. ____, 137 S. Ct. 1718, 198 L. Ed. 2d 177 (2017); *Davidson v. Capital One Bank*, 797 F.3d 1309, 1316, n.8 (11th Cir. 2015); *James v. Wadas*, 724 F.3d 1312, 1317 (10th Cir. 2013); *Schlegal v. Wells Fargo Bank*, 720 F.3d 1204, 1208 (9th Cir. 2013); *Hester v. Graham, Bright & Smith*, 289 Fed. Appx. 35, 41 (5th Cir. 2008); *Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti*, 374 F.3d 56, 61 (2d Cir. 2004).

[14] *Tepper v. Amos Fin., L.L.C.*, 898 F.3d at 365 (3d Cir. 2018) ("'Any debts'….stands in contrast to 'debts owed or due…another,' which limits only the 'regularly collects' definition."); *Davidson v. Capital One Bank*, 797 F.3d 1309, 1316, n.8 (11th Cir. 2015) ("'principal purpose' not modified by 'owed or due another'"); *see also Schlegel v. Wells Fargo Bank*, 720 F.3d 1204, 1209 (9th Cir. 2013) ("This argument fails, because it would require us to overlook the word 'another' in the second definition of 'debt collector'").

[15] *Henson v. Santander Consumer USA, Inc.*, ____ U.S. ____, 137 S. Ct. 1718, 198 L. Ed. 2d 177 (2017).

[16] *Henson*, ____ U.S. ____, 137 S. Ct. 1718, 198 L. Ed. 2d 177 (2017); *see also* 898 F.3d at 371 (concluding that debt buyer defendant was a debt collector under principal purpose prong); *Skinner v. LVNV Funding*, 2018 WL 319320, *3-4 (N.D. Ill., Jan. 8, 2018) (concluding that "a debt purchaser can still qualify as a debt collector under § 1692a(6) if its principal purpose is the collection of debts"); *Mitchell v. LVNV Funding L.L.C.*, 2017 WL 6406594 (N.D. Ind., Dec. 15, 2017) ("*Henson* explicitly did not address the first prong in the definition of a debt collector").

After Court denied DNF's motion to dismiss Reygadas' pleading on this issue, the Third Circuit Court of Appeals ruled that debt buyers are debt collectors under the "principal purpose" prong of the FDCPA.[17] The debt buyer (Crown Asset Management) in *Barbato* put forth the same argument the DNF does here: that since it had no "overt acts of collection" by direct communication with consumers, but instead outsources collection to other entities, it did not meet the "primary purpose" prong of "debt collector."[18]

The Third Circuit had little trouble rejecting the "passive debt buyer" argument by focusing on the text of the FDCPA:

> The statutory context of the "principal purpose" definition casts further doubt on Crown's argument that Congress meant to limit it to only those entities that actively collect from consumers. In contrast to the "regularly collects" definition, where Congress explicitly used the verb "to collect" in describing the actions of those it intended the definition to cover, in the "principal purpose" definition, Congress used the noun "collection" and did not specify who must do the collecting or to whom the debt must be owed. Thus, by its terms, the "principal purpose" definition sweeps more broadly than the "regularly collects" definition, and we must presume that the "legislature says ... what it means and means ... what it says."
>
> In a plain language argument of its own, Crown retorts that to find that it qualifies under the "principal purpose" definition even though it outsources its collection activities would be to read the word "indirectly" into the statute where it does not appear. This is especially problematic, Crown contends, because the "regularly collects" definition does specify that an entity can collect "directly or indirectly," while Congress omitted this qualifier from the "principal purpose" definition.
>
> We are unpersuaded. Again, the fact that the "regularly collects" definition employs a verb and the "principal purpose" definition employs a noun is critical. In the "regularly collects" definition, the "directly or indirectly" qualification is necessary because one could reasonably interpret "collect" to refer to only direct efforts to collect—it is, after all, "a verb that requires action."

---

[17] *Barbato v. Greystone Alliance, LLC*, 916 F.3d 260 (3d Cir. 2019).

[18] 916 F.3d at 266.

> The "principal purpose" definition, however, needs no such qualification. "Collection" by its very definition may be indirect, and that is the type of collection in which Crown engages: it buys consumer debt and hires debt collectors to collect on it. The existence of a middleman does not change the essential nature—the "principal purpose"—of Crown's business. As Barbato points out, Crown could buy debt for the charitable purpose of forgiving it, or it could buy debt for the purpose of reselling it to unrelated parties at a profit. In both of those cases, the entity's "principal purpose" would not be collection. But Crown does neither of those things. Indeed, the record reflects that Crown's only business is the purchasing of debts for the purpose of collecting on those debts, and, as Crown candidly acknowledged at oral argument, without the collection of those debts, Crown would cease to exist. In short, Crown falls squarely within § 1692a(6)'s "principal purpose" definition.[19]

There is simply no difference, even given some of the undisputed facts here, between DNF's business model and Crown's.

Most important, DNF sued Reygadas to obtain a judgment against her after the Purchasing Power account was allegedly in default in order to collect the debt.[20] Reygadas has also provided the Court 129 debt collection complaints DNF has filed in Arkansas, most of which have been filed after Reygadas filed this civil action. Obviously, DNF will continue to sue consumers to collect the debts it purchases. One DNF Assocs.'s owners and its managing member, actively participates in debt collection by providing affidavits asserting the amount consumers owe DNF Assocs.[21] These affidavits are attached to debt collection complaints by DNF Assocs. as the named plaintiff.[22]

---

[19] *Id.* (internal citations omitted).

[20] McGaha Declaration, Exhibit 1

[21] Document 11, ¶¶ 17-28.

[22] *Id.*

6

Placing DNF outside the parameters of the FDCPA when it is actively collecting through litigation would frustrate the remedial purpose of the FDCPA to protect consumers from abusive collection practices.

Second, DNF Assocs.'s is a licensed collection agency as required by Arkansas law.[23] As part of its licensing application, its manager, Dave Maczka, certified he has over 20 years of experience in the debt collection industry and verified his knowledge of the Fair Debt Collection Practices Act during by attaching his results from an FDCPA compliance training course.

Reygadas more than established a genuine issue of material fact that DNF is a debt collector under the primary purpose prong.

II. **DNF can be found liable for its own conduct under the FDCPA because the Jacob Firm's knowledge that Reygadas was represented by an attorney is imputed to DNF under agency principals.**

Debt collectors may not contact a consumer if it knows to be represented by an attorney:

> (a) Communication with the consumer generally—Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt—
>
> (2) if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer[.]

---

[23] Ark. Code Ann. § 17-24-301 ("Unless licensed by the State Board of Collection Agencies under this subchapter it is unlawful to (1) Engage in the collection of delinquent accounts, bills, or other forms of indebtedness; (2) Use a fictitious name or any name other than their own in the collection of their own accounts receivable; (3) Solicit claims for collection; or (4) Purchase and attempt to collect delinquent accounts or bills.; *Simpson v. Cavalry SPV I, LLC*, 2014 Ark. 363, 440 S.W.3d 335 (holding that entity that purchased delinquent accounts and hired attorney to collect was collection agency required to be licensed).

"[W]hen Congress creates a tort action, it legislates against a legal background of ordinary tort-related vicarious liability rules and consequently intends its legislation to incorporate those rules."[24] Hornbook rules on agency apply here:

> Generally, the principal is chargeable with, and bound by, the knowledge of or notice to an agent received while the agent is acting within the scope of his or her authority and in reference to a matter over which such authority extends. The fact that the knowledge or notice of the agent was not actually communicated does not prevent the operation of the general rule because the agent's knowledge or notice is imputed to the principal and is constructive notice.
>
> According to the Restatement Third of Agency, for purposes of determining a principal's legal relations with a third party, notice of a fact that an agent knows or has reason to know is imputed to the principal if knowledge of the fact is material to the agent's duties to the principal…Furthermore, a notification given to an agent is effective as notice to the principal if the agent has actual or apparent authority to receive the notification unless the person who gives the notification knows or has reason to know that the agent is acting adversely to the principal.[25]
>
> ***
>
> Some courts ascribe as the reason for the rule that a principal is charged with notice to or knowledge of an agent the theory that the agent, acting within the scope of his or her authority, is, as to the matters embraced therein, the alter ego of the principal. Other courts base the rule on the duty of the agent to communicate all material information to the principal and the presumption that the agent has done so. This rule is known as the "imputation doctrine."
>
> The rule of imputed knowledge is a rule of public policy based upon the necessities of general commercial relationships, and where a principal acts through an agent, a third person dealing with the agent is entitled to rely upon the agent's knowledge and notice, and it binds the principal, who should incur the risks of the agent's infidelity or lack of diligence rather than innocent third parties. In other words, it is the principal who has placed the agent in the position of trust and confidence who should suffer rather than an innocent stranger. Thus, the principal is bound by notice to his or her agent for the same reason

---

[24] *Meyer v. Holley*, 537 U.S. 280, 123 S.Ct. 824, 154 L.Ed.2d 753 (2003).
[25] 2 Am. Jur. 2d Agency § 255 (internal citations omitted).

8

and to the same extent that the principal is bound by the act of his or her agent.[26]

Here, DNF hired the Jacob Firm to sue Reygadas to collect the debt in name of DNF supported by an Affidavit from one of DNF's owners. After DNF sued Reygadas, the Jacob Firm was notified by US Mail and a Notice of Electronic Filing that Reygadas was represented by an attorney. Notice to the Jacob Firm that Reygadas was represented by an attorney binds DNF, who should incur any risk that the Jacob Firm did not actually or diligently communicate to DNF that Reygadas was represented by counsel. DNF placed its trust and confidence in the Jacob Firm to collect the debt through litigation. The Jacob's Firm knowledge that the person sued hired an attorney must be imputed to DNF, rather than foreclose Reygadas' rights to have her retained attorney handle the matter she hired him to handle.

Respectfully, DNF misses the point on liability. Textbook agency law imputes the knowledge that Reygadas was represented by an attorney on it. Therefore, it had to inform any other debt collector it hired to collect the debt that Reygadas had retained an attorney. DNF's failure to do so put it at risk for liability under the FDCPA, 15 U.S.C. § 1692c(a)(2). And, it is exactly why Reygadas did not sue RGS.

This theory of liability under the FDCPA has been recognized:

> It is undisputed that LVNV's three prior servicers assigned to collect on the Torres account—whether for the purpose of obtaining a judgment, in reviving the judgment, or in pursuing garnishment liens in post-judgment—were aware that Torres had counsel. When servicing agents—such as Blatt, Bleecker, and Miller—are acting both within the scope of their employment and for the benefit of LVNV, their knowledge is imputed upon LVNV. There is no dispute that: (1) LVNV—via its master agent Resurgent—used debt servicers for the purpose of collecting debts in both legal and non-legal

---

[26] 2 Am. Jur. 2d Agency § 256 (internal citations omitted).

settings; (2) that Resurgent assigned the debt collection duties upon Blatt, Bleecker, and Miller for the purpose of collecting debt owed by Torres to LVNV; (3) that all three prior servicers were aware of Torres's legal representation at times during or after their respective periods of representation through direct communications with Torres's counsel, ( (4) that Resurgent account records were updated at some point in time to indicate a 'cease and desist' instruction within their account records, and, (5) that Resurgent and any of the sub-servicers, including NRC, were at all times assigned to carry out collection efforts on behalf of LVNV…Accordingly, there is no dispute of a material fact that LVNV knew of Torres's representation under § 1692c(a)(2).[27]

Because DNF and the Jacob Firm were unsuccessful in obtaining a judgment against Reygadas on which it could involuntarily garnish or execute, the only way for RGS to collect the debt from Reygadas was to communicate with her or her attorney directly. DNF obviously withheld the information that Reygadas was represented by counsel from RGS, which is actionable conduct under the FDCPA and the AFDCPA.

## Conclusion

Reygadas raises genuine issues of material fact on both issues raised by DNF. Therefore, she respectfully requests the Court deny the motion for summary judgment and allow her claims to proceed to trial.

Respectfully submitted,

Corey D. McGaha
Ark. Bar No. 2003047
William T. Crowder
Ark. Bar No. 2003138
CROWDER MCGAHA, LLP
5507 Ranch Drive, Suite 202
Little Rock, AR 72223
Phone: (501) 205-4026
Fax: (501) 367-8208
cmcgaha@crowdermcgaha.com
wcrowder@crowdermcgaha.com

---

[27] *Torres v. LVNV Funding, LLC*, 2018 WL 1508535 (N.D. Ill., March 27, 2018).

10

11