UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

_____

STEPHANIE REYGADAS

                              Plaintiff,                        Case No. 2:18-cv-02184-PKH

v.

DNF ASSOCIATES, LLC

                              Defendant.

_____

**DNF ASSOCIATES, LLC'S REPLY BRIEF IN FURTHER SUPPORT OF ITS
<u>MOTION FOR SUMMARY JUDGMENT</u>**

      Defendant DNF Associates, LLC ("DNF"), by and through its attorneys, Lippes Mathias Wexler Friedman LLP, submits this Brief in reply to Plaintiff Stephanie Reygadas' ("Plaintiff") Opposition to and in further support of its motion for summary judgment.

**INTRODUCTION**

      It is undisputed that DNF owns Plaintiff's account relating to a debt originated by Purchasing Power. Dkt. 29, p. 3. It is also undisputed that DNF retained the Jacob Law Group, PLLC (the "Jacob Firm") and Radius Global Solutions, LLC ("RGS") to engage in collection efforts on behalf of DNF regarding Plaintiff's account. *Id*. It is also not contested that DNF did not draft or send any notices to Plaintiff. *Id*. at p. 2. As the material facts are not in dispute, this matter is ripe for adjudication as a matter of law.

      Plaintiff's theory that DNF violated the Fair Debt Collection Practices Act, 15 U.S.C. 1692, *et seq.* ("FDCPA") and Arkansas Fair Debt Collection Practices Act, Ark. Code Ann. § 17-24-501, *et seq*. ("AFDCPA") when RGS, not DNF, sent Plaintiff a collection letter despite having no

knowledge that Plaintiff was represented by counsel is completely unfounded as a matter of law. As set forth below and as argued in DNF's initial brief, DNF has established that it is not a "debt collector" defined by the FDCPA. Notably, Plaintiff fails to address the decisional authority of three other District Courts and Massachusetts' high court where debt buyers, like DNF, were found to not be debt collectors. More importantly, Plaintiff fails to acknowledge that the United States District Court, District of Oregon has previously determined that DNF is not a debt collector as a matter of law.[1] As argued in DNF's moving brief, there is a gap in the FDCPA because the statute was not codified to regulate the debt buyer. Any modifications to definition of "debt collector" must be made by Congress and not the judicial branch.

In the event the Court finds that DNF is a debt collector, Plaintiff's claim still fails because RGS did not violate the FDCPA or AFDCPA because RGS had no knowledge that Plaintiff was represented by counsel when it sent her a collection letter. Accordingly, the Court should grant DNF's motion for summary judgment dismissing Plaintiff's Amended Complaint.

**I.       DNF Has Established that It Is Not a Debt Collector as a Matter of Law**

The facts before this Court do not support a finding that DNF is a debt collector as defined by the FDCPA under "principal purpose" prong of the definition of "debt collector" at issue.  In determining whether the principal purpose of DNF, a passive debt buyer that does not interact with consumers, is the *collection of any debts*, the Court must look to the legislative history of the statute as the definition is ambiguous. *See Rote v. Zel Custom Mfg. LLC*, 816 F.3d 383, 392 (6th Cir.

---

[1] A number of DNF's key points have largely gone unaddressed by Plaintiff. For example, Plaintiff does not dispute DNF's argument that the FDCPA's legislative history and the California Fair Debt Buying Practices Act demonstrate that passive debt buyers were not intended to be subject to the FDCPA. Plaintiff also fails to address how hiring a debt collector or law firm to engage in all the collection efforts makes DNF's principal purpose debt collection when DNF does not engage in the actual collection of debt or interact with consumers.

2

2016) (internal citations omitted); *Alpine Glass, Inc. v Illinois Farms Ins. Co.*, 643 F.3d 659, 664 (8th Cir. 2011); *In re Fairfield Communities, Inc.*, 990 F.2d 1075, 1077 (8th Cir. 1993); *Deutsche Bank Nat. Trust Co. v. Collins*, 2012 WL 768206 at *2 (W.D. Ark. Mar. 7, 2012); *Dorrian v. LVNV Funding, LLC*, 479 Mass. 265, 272 (2018).

Several District Courts held that a passive debt buyer is not subject to the FDCPA because it does not engage in the "collection of debt" that Congress intended to regulate. In *McAdory v. M.N.S. & Associates, LLC*, 2017 WL 5071263 (D. Or. Nov. 3, 2017), *recons. denied*, 2018 WL 1256482 (D. Or. Mar. 11, 2018) (*appeal pending*), the District of Oregon granted DNF's motion to dismiss determining that DNF is not a debt collector as a matter of law. *McAdory*, 2017 WL 5071263 at *1. The court recognized that "[t]he fact that a business *benefits* from the collection of debt by an entirely separate third party does not necessarily make the principal purpose of that business the collection of those debts." *Id.* at *3 (emphasis in original). The court then further looked to the purpose of the FDCPA as guidance. "When looking at the various activities punished under the FDCPA, it becomes clear that what Congress was concerned with, and intended to regulate, was the *interaction* between a debt collector and a consumer." *Id.* (emphasis in original) (citing 15 U.S.C. §§ 1692c, 1692d, 1692e, 1692f; *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 577 (2010) ("[t]he Act regulates interactions between consumer debtors and 'debt collector[s]'"). In determining that the FDCPA intended to govern the interaction between a debt collector and consumer, the court held that "there is little reason to suggest that a company which only purchases debt and the contracts with a third party for all actual collection activity was considered by Congress when it was drafting the FDCPA." *Id.*

Additionally, on the plaintiff's motion for reconsideration, the court refused to alter its decision after the plaintiff presented new allegations that DNF held debt collection licenses in

3

several states and filed lawsuits against consumers. *McAdory*, 2018 WL 1256482 at *2-3. In rejecting the notion that being a licensed collection agency supports the inference that DNF was a debt collector, the court reasoned that "certain state statutes expressly subject debt buyers to their consumer regulatory schemes does not impact the analysis under the completely distinct federal definitions." *Id*. at *3. With regard to lawsuits filed in DNF's name, the court rejected the plaintiff's argument because "DNF itself is not 'interacting' with the debtor because it is not executing the litigation activities." *Id*.

In *Kasalo v. Trident Asset Mgmt., LLC*, 53 F.Supp3d 1072 (N.D. Ill. 2014), the Northern District of Illinois granted the defendant-debt buyer's motion for summary judgment and dismissed the complaint because the defendant did not engage in collection and instead hired others to do so. *Kasalo*, 53 F. Supp.3d at 1077. The court explicitly stated that the FDCPA "governs interactions between debt collectors and consumers." *Id*. at 1078. The defendant did not send any letters or make any telephone calls. *Id.* at 1079. Although the defendant's name was on a letter sent to the plaintiff, the letter was sent by the collection agency with whom the defendant contracted who also made all of the collection efforts. *Id.* In holding that the defendant was not a "debt collector" and dismissing the FDCPA claim against it, the court reasoned that "[a]n entity that acquires a consumer's debt hoping to collect it but that does not have any interaction with the consumer itself does not necessarily undertake activities that fall within this purview." *Id.* at 1078-79.

In *Gold v. Midland Credit Mgmt., Inc.*, 82 F.Supp.3d 1064 (N.D. Cal. 2015), the defendant-debt buyer moved for summary judgment dismissing the plaintiff's FDCPA claim because it engaged in no direct or indirect efforts to collect on the plaintiff's account and was only involved in the debt buying business. *Gold*, 82 F.Supp.3d at 1071. The Northern District of California found

4

that the record was devoid of any evidence that the defendant attempted to communicate with consumers. The court noted that the plaintiff offered no evidence to suggest that the defendant's business was debt collection and that instead "[p]laintiff would have the Court fill in the gap with an inference that because [the defendant] is in the business of acquiring defaulted debts, it must therefore be in the business of collecting on those debts." *Id.* at 1071. Relying in part on *Kasalo, supra*, the court held that "[i]n the absence of evidence showing a purpose to collect on those debts, [p]laintiff's legal arguments are insufficient to create a triable issue of fact on whether [the defendant] uses any instrumentality of interstate commerce or the mails to engage in a business the principal purpose of which is the collection of any debts." *Id.* (internal quotations omitted). As such, the court held that the debt purchaser did not have the principal purpose of collecting debts and thus was not a "debt collector" under the FDCPA. *Id.*

In *Schneider v. JTM Capital Mgmt., LLC*, 2018 WL 2276238 (D. Or. Mar. 22, 2018), the plaintiff commenced an action against the defendant-debt buyer claiming that the defendant was liable for the actions of a third party "debt collector" with whom it contracted to collect on the plaintiff's account. *Schneider,* 2018 WL 2276238, at *1. The defendant moved for summary judgment arguing that it could not be held liable for alleged violations of the FDCPA because it is a passive debt buyer that purchases defaulted accounts, does not engage in any collection related activities and therefore does not meet the definition of "debt collector." *Id.*

The District of Oregon granted summary judgment in favor of the defendant, holding:

> Here, even though [the] defendant acquires debts already in default, there is no evidence to suggest it did so to facilitate the collection of the debt for another. As noted above, there is some support for the argument that an entity that primarily purchases defaulted debt as its business purpose is a "debt collector" because its purpose is to eventually collect on the debt, even if it hires a third party to do so. Nevertheless, the more persuasive line of cases specifically analyzes the principal purpose prong of the definition of "debt collector" and

>excludes such entities from the definition. See, *e.g., Gold v. Midland Credit Mgmt., Inc.*, 82 F. Supp. 3d 1064, 1071 (N.D. Cal. 2015) (Plaintiff would have the court fill in the gap with an inference that because Midland Funding is in the business of acquiring defaulted debts, it must therefore be in the business of collecting on those debts.); *Kasalo v. Trident Asset Mgmt., LLC*, 53 F. Supp. 3d 1072, 1079 (N.D. Ill. 2014) (Although OPS purchased Kasalo's debt when it was in default, OPS has not undertaken any collection activity, as required to fit the definition of "collector.").
>. . .
>
>The definition of "debt collector" does not include purely passive debt purchasing activity. As defense counsel noted at oral argument, "collect" is a verb that requires action. To the extent plaintiff is concerned about the increased abuse of debtors via fly-by-night third parties utilized by passive debt purchasers, that is an issue appropriate for Congress to resolve. Defendant's motion for summary judgment should be granted.

*Schneider*, 2018 WL 2276238 at *5. Thus, following this line of cases, it is clear that the FDCPA is intended on governing third party debt collectors who *actually interact* with consumers, as opposed to purely passive debt buyers, such as DNF, who have no contact with consumers.

Plaintiff presents three arguments in support of her theory that DNF is a debt collector under the "principal purpose" prong: (1) DNF files lawsuits to obtain judgments against consumers; (2) DNF is a licensed collection agency in Arkansas; and (3) the recent decision in *Barbato v. Greystone Alliance, LLC*, 916 F.3d 260 (3d Cir. 2019) rejected another debt buyer's argument that it is not a "debt collector" under the FDCPA. First, as detailed above, the court in *McAdory* explicitly rejected the plaintiff's argument that filing lawsuits constituted debt collection. *McAdory*, 2018 WL 1256482 at *3. There, the court explained that it is the *attorney* who was executing all the litigation activities. *Id*. While Plaintiff argues that DNF is participating in collection efforts because it signs affidavits, Plaintiff fails to explain how the execution of affidavits could possibly be considered a communication with a consumer when it is simply a statement of fact filed by the attorney with a court.

6

Second, Plaintiff's argument that because DNF is a license collection agency in Arkansas, its principal purpose is debt collection fares no better. Arkansas law requires a business that purchases defaulted debt must be licensed. *See* Ark. Code § 17-24-102(a)(10). Regardless of the activity relating to the collection by another party, DNF is required to be licensed because for the sole fact that it purchases debt in default at the time of acquisition. *See also McAdory*, 2018 WL 1256482 at *3 ("That certain state statutes expressly subject debt buyers to their consumer debt regulatory schemes does not impact the analysis under the completely distinct federal definitions.").

Finally, Plaintiff relies on Third Circuit decision in *Barbato* to support her argument that DNF is a debt collector under the FDCPA. In doing do, Plaintiff ignores the other District Court opinions on this issue and mistakenly insinuates that *Barbato* is binding on this Court. As discussed in DNF's initial brief, the decision in *Barbato* is flawed in several respects. In *Barbato*, despite finding that the text of the statute was ambiguous, the Third Circuit determined that the defendant-debt buyer was subject to the FDCPA based on its textual analysis alone. *Barbato*, 916 F.3d at 268. Critically, the court overlooked common statutory interpretation principles and concluded that Congress intended "collection" to be defined as "that which is collected" as opposed to "the act or process of collecting." *Barbato*, 916 F.3d at 267 ("While it is true that 'collection' can be defined as 'the act or process of collecting,' it can also be defined as 'that which is collected.'"). In doing so, the court ignored the legislative history and made no attempt to address whether the primary definition of "collection" would require the interaction with a consumer that the legislative history of the FDCPA clearly requires when determining a party's status as a "debt collector."

Given the ambiguity of the statute, the court should have looked to the legislative history for further clarity of whom Congress intended to be subject to the FDCPA. Indeed, in the last two

years, the United States Supreme Court has twice indicated that the FDCPA definition of "debt collector" is ambiguous and had to look at Congress' intent regarding whom Congress intended to be subject to the FDCPA. *See Henson v. Santander Consumer USA, Inc.*, 137 S.Ct. 1718, 1724 (2017) ("Congress never had the chance to consider what should be done about those in the business of purchasing defaulted debt"); *Obduskey v. McCarthy & Holthus LLP*, __ S.Ct. __, 2019 WL 1264579 at *6 (Mar. 20, 2019) ("for those of us who use legislative history to help interpret statutes, the history of the FDCPA supports our reading"). The court in *Barbato*, however, dismissed the defendant-debt buyer's legislative history argument by claiming that "even if the purpose of the statute was to reach repo men, that purpose is furthered by recognizing [the debt buyer] as a debt collector under § 1692a(6)." *Barbato*, 916 F.3d at 268. The legislative history of the FDCPA, however, reaches the opposite conclusion. As the Senate Committee on Banking, Housing, and Urban Affairs stated in creating the FDCPA, "[t]he committee intends the term 'debt collector'… to cover all third persons who regularly collect debts for others. The primary persons intended to be covered are independent debt collectors." S. Rep. 95-382, 95th Cong., 1st Sess., at *3.

Taking the legislative history into consideration, the stated purpose of the FDCPA, "to eliminate abusive debt collection practices by debt collectors," is clear that the Act is targeting debt collectors who engage in unfair or deceptive *debt collection practices* when interacting with consumers. 15 U.S.C. § 1692(e). Instead, *Barbato* reasoned that because the debt buyer "delegates" debt collection and lacks the same goodwill that creditors seek to maintain, "that makes [the debt buyer] far more like a repo man than a creditor." *Barbato*, 916 F.3d at 269. The court, however, goes no further to articulate its rationale when it stepped into the shoes of Congress and redefined "debt collector." Respectfully, the Third Circuit intentionally avoided the legislative history of the

8

FDCPA because, had the court reviewed the legislative history, it would have been forced to reach the conclusion that a passive debt buyer is not a "debt collector." Importantly, every court that has analyzed the FDCPA's legislative history has found that the FDCPA does not apply to passive debt buyers that retain or contract with independent third parties to engage in all the collection activity. *See McAdory, supra; Dorrian*, 479 Mass. 265.

As discussed above, the FDCPA is intended to govern the debt collector's conduct when interacting with the consumer. Here, it is undisputed that only RGS communicated with Plaintiff regarding the debt at issue. DNF's principal purpose cannot be said to be the collection of debt when it does not engage in debt collection related activities, but instead retains or contracts with independent third parties to collect on debts it owns. Accordingly, this Court should grant summary judgment in favor of DNF.

## II.   DNF Did Not Violate the FDCPA

As argued above and throughout DNF's initial brief, DNF is not a "debt collector" defined by the FDCPA and, therefore, cannot be subject to liability. In the event the Court determines that DNF is subject to the FDCPA, DNF cannot be liable for an alleged violation of § 1692c(a)(2) when no such violation occurred. It is not disputed that the Jacob Firm's knowledge that Plaintiff was represented by counsel may be imputed to DNF, however, that knowledge is not imputed to RGS when it sent a collection letter to Plaintiff.

It is well established that in order to maintain a claim for a violation of § 1692c(a)(2), a debt collector must have actual knowledge that a debtor is represented by counsel when it communicates with the debtor. *See Schmitt v. FMA Alliance*, 398 F.3d 995 (8th Cir. 2005); *Randolph v. I.M.B.S., Inc.*, 368 F.3d 726 (7th Cir. 2004); *Taufen v. Messerli & Kramer, P.A.* 2014 WL 668019 (D. Minn. Feb. 19, 2014); *Lynch v. Nelson Watson & Associates, LLC*, 2011 WL

9

2472588 (D. Kan. June 21, 2011); *Hennington v. American Express Co.*, 2010 WL 1329003 (S.D. Miss. Mar. 29, 2010) (collecting cases). In addition, the agent-debt collector must have violated the FDCPA for a principal-debt collector to be vicariously liable. *See Janetos v. Fulton Friedman & Gullace LLP*, 825 F.3d 317, 325 (7th Cir. 2016); *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 108 (6th Cir. 1996).

Plaintiff does not dispute that RGS had no knowledge of Plaintiff's representation by counsel when it sent her a collection letter. Dkt. 29, p. 4. Accordingly, Plaintiff agrees that RGS's transmittal of the letter to Plaintiff was not in and of itself a violation of the FDCPA.

Plaintiff relies on *Torres v. LVNV Funding, LLC*, 2018 WL 1508535 (N.D. Ill. Mar. 27, 2018) in support of her theory that DNF is directly liable under the FDCPA.[2] In *Torres*, the court found that the debt collector had no actual knowledge that the plaintiff was represented by counsel and was not liable for an alleged FDCPA violation. *Torres*, 2018 WL 1508535 at *6. While the court in *Torres* recognized that a debt collector can be vicariously liable for FDCPA violations committed by another debt collector acting on the debt collector's behalf, the court seemingly held, without reason, that a debt buyer can be liable even if its debt collector-agent did not violate the FDCPA. Said differently, the court found that although the debt buyer's third party debt collector did not violate the FDCPA, the debt buyer nonetheless violated the FDCPA. This decision is simply nonsensical and demonstrates that the court did not understand the vicarious liability issue. For example, using the *Torres* court's logic, an employer can be liable for its employee's auto accident despite a finding that the employee was not negligent in causing the accident. The court in *Torres*, however, cites to no law in support of its conclusion. In fact, that conclusion contradicts

---

[2] Plaintiff advances no argument that DNF is vicariously liable for the conduct of RGS when RGS sent Plaintiff a collection letter dated July 4, 2018.

10

the basic principles of agency and vicarious liability. *See Schmitt*, 398 F.3d at 998 ("We decline to follow either [*Powers v. Prof'l Credit Servs.*, 107 F.Supp.2d 166 (N.D.N.Y. 2000)] or [*Micare v. Foster & Garbus*, 132 F.Supp.2d 77 (N.D.N.Y. 2001)] and will not embrace the FDCPA as a special exception to general agency law.").

Furthermore, Plaintiff contends that DNF had a duty to inform RGS that Plaintiff was represented by counsel and the withholding of information is actionable conduct under the FDCPA and AFDCPA. *See* Dkt., 28, Opp. Br., p. 9-10. The FDCPA, however, creates no affirmative duty on a debt buyer "to convey the material facts of the matter to the debt collector, including information regarding the attorney's representation of the debtor." *Schmitt*, 398 F.3d at 997. More importantly, Plaintiff fails to cite any statutory or decisional authority that imposes such a duty on DNF. Even if DNF had actual knowledge that Plaintiff was represented by counsel when RGS sent its collection letter to plaintiff, Plaintiff does not dispute that RGS had no knowledge that Plaintiff was represented by counsel when it sent the letter. Dkt. 29, p. 4. Accordingly, DNF had no duty to notify RGS that Plaintiff was represented by counsel and DNF cannot be vicariously or directly liable for a violation of the FDCPA that did not occur.

## CONCLUSION

DNF is a passive debt buyer and does not engage in collection activities concerning the debt it owns. Specifically, DNF has no interaction with consumers, including Plaintiff, but instead, contracts with independent third parties to engage in all collection related activities. Accordingly, DNF has established that it is not a "debt collector" as defined by the FDCPA.

In the event the Court determines that DNF is a debt collector, no violation of 15 U.S.C. § 1692c(a)(2) occurred as RGS had no actual knowledge that Plaintiff was represented by counsel.

In light of the foregoing, the Court should grant DNF's motion for summary judgment and dismiss the Amended Complaint in its entirety.

DATED:	April 5, 2019

                                **LIPPES MATHIAS WEXLER FRIEDMAN LLP**

                                s/ Brendan H. Little
                                Brendan H. Little, Esq.
                                Attorneys for Defendant
                                50 Fountain Plaza, Suite 1700
                                Buffalo, NY 14202
                                T: 716-853-5100
                                F: 716-853-5199
                                E: blittle@lippes.com