In the United States District Court
Western District of Arkansas
Fort Smith Division

Stephanie Reygadas                                                                          Plaintiff

v.                            Case No. 2:18-cv-2184

DNF Associates LLC                                                                       Defendant

**Plaintiff's Notice of Supplement Authority in Support of Opposition to Motion for Summary Judgment**

Since the parties briefed Defendant DNF Associates LLC's motion for summary judgment, the United States District Court for the Northern District of Illinois issued an opinion in *Valenta v. Midland Funding, LLC*, 2019 WL 1429656, holding that no genuine issues of material fact existed that hat Midland Funding, LLC, a debt buyer, was a "debt collector" under the principal purpose prong of 15 U.S.C. § 1692a(6):

> Plaintiff argues that [Midland Funding, LLC] is a debt collector under the 'principal purpose' prong of § 1692a(6) because its sole purpose and revenue resource is the collection of debt, and alternatively, it engages in collection activity by filing collection lawsuits against debtors.
>
> The Court agrees with plaintiff.            ***
>
> [Midland Funding] argues that, even under 'principal purpose' prong of § 1692a(6), no person or entity can be a "debt collector' unless it interacts with consumers. The Court does not agree. Section 1692a(6) has two distinct prongs, and 'even if the second prong may require interaction with debtors, the plain language of the first prong does not.' [internal citations omitted].[1]

The *Valenta* opinion is attached.

Corey D. McGaha<br>
Ark. Bar No. 2003047<br>
William T. Crowder

---

[1] 2019 WL 1429656, *2-3.

Ark. Bar No. 2003138  
CROWDER MCGAHA, LLP  
5507 Ranch Drive, Suite 202  
Little Rock, AR 72223  
Phone: (501) 205-4026  
Fax: (501) 367-8208  
cmcgaha@crowdermcgaha.com  
wcrowder@crowdermcgaha.com

2019 WL 1429656
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.

Tomas VALENTA, Plaintiff,
v.
MIDLAND FUNDING, LLC, and Midland Credit Management, Inc., Defendants.

No. 17 C 6609
|
Signed 03/29/2019

**Attorneys and Law Firms**

Celetha Chatman, Michael Jacob Wood, Sarah Margaret Barnes, Community Lawyers Group, Ltd., Andrew Finko, Andrew Finko P.C., Chicago, IL, for Plaintiff.

David M. Schultz, Brandon S. Stein, Carlos A. Ortiz, Hinshaw & Culbertson LLP, Chicago, IL, for Defendants.

## **MEMORANDUM OPINION AND ORDER**

HON. JORGE ALONSO, United States District Judge

**\*1** Plaintiff, Tomas Valenta, brings this case under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq, against defendants, Midland Funding, LLC, and Midland Credit Management, Inc. The case is before the Court on the parties' cross-motions for summary judgment. For the following reasons, the motions are granted in part and denied in part.

## **BACKGROUND**

Plaintiff incurred a debt on a Synchrony Bank credit card account, which he became unable to pay and on which he defaulted. (Defs.' LR 56.1 Resp. ¶¶ 11-12, ECF No. 75.) Plaintiff claims that this was a personal account used solely for personal purposes, but he admits that he works as a handyman, and the debt on which he defaulted appears to stem from a $ 1,000 purchase of mortar and grout at Lowe's. (*Id.*; Pl.'s LR 56.1 Resp. ¶¶ 4-9, ECF No. 82.)

Defendant Midland Funding, LLC ("MF"), purchases debt, which it then assigns to Midland Credit Management, Inc. ("MCM"), for servicing and collection. (Pl.'s LR 56.1 Resp. ¶¶ 11, 15.) MF purchased plaintiff's Synchrony Bank credit card debt and assigned it to MCM for collection. (Defs.' LR 56.1 Resp. ¶ 13.)

After receiving numerous phone calls from debt collectors, plaintiff engaged counsel. (*Id.* ¶ 14.) On August 18, 2017, a Friday, plaintiff's counsel sent out a letter via fax to dispute the amount of the alleged debt. (*Id.*) The letter is addressed to MF, but MCM admits receiving it. (*Id.*; Pl.'s LR 56.1 Resp. ¶¶ 3, 17.) On Monday, August 21, 2017, the next business day, MCM processed the fax and marked plaintiff's account as disputed. (Pl.'s LR 56.1 Resp. ¶ 22.)

Every Monday morning following the first and third Sunday of the month, MCM pulls data from its accounts, including those that have been marked as disputed, and uses it to generate a list of accounts to distribute to credit bureaus. (*Id.* ¶ 23.) On the Friday of that week, MCM furnishes the list to credit bureaus. (*Id.* ¶ 24.) During the five days between the generation and distribution of the list, MCM runs "quality control checks ... to ensure that it is conveying accurate information to the credit bureaus." (*Id.* ¶ 25.)

By the time MCM had processed plaintiff's dispute letter on the evening of August 21, 2017, MCM had already finalized its list of disputed accounts for that week. (*Id.* ¶¶ 26-27.) On August 25, 2017, MCM communicated information about plaintiff's Synchrony Bank debt to the credit bureaus, including the balance, account number, and date first reported—but it did not communicate that the debt was disputed. (Defs.' LR 56.1 Resp. ¶¶ 18-19.) Either plaintiff or his counsel pulled plaintiff's Equifax credit report on September 11, 2017, and, because the Equifax report was based on the data MCM had furnished on August 25, the report did not show that plaintiff had disputed the Synchrony Bank debt. (Defs.' LR 56.1 Resp. ¶¶ 17-18.)

On September 13, 2017, plaintiff filed this suit, alleging that defendants violated 15 U.S.C. § 1692e(8) when they reported information about plaintiff's debt to credit bureaus without communicating that plaintiff had disputed the debt.

## **DISCUSSION**

**\*2** "The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Wackett v. City of Beaver Dam,*

642 F.3d 578, 581 (7th Cir. 2011). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court may not weigh conflicting evidence or make credibility determinations, but the party opposing summary judgment must point to competent evidence that would be admissible at trial to demonstrate a genuine dispute of material fact. *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 705 (7th Cir. 2011); *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009); *see Modrowski v. Pigatto*, 712 F.3d 1166, 1167 (7th Cir. 2013) (court must enter summary judgment against a party who " 'does not come forward with evidence that would reasonably permit the finder of fact to find in [its] favor on a material question' ") (quoting *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994) ). All facts and reasonable inferences are construed in the light most favorable to the nonmoving party. *Chaib v. Geo Grp., Inc.*, 819 F.3d 337, 341 (7th Cir. 2016).

The FDCPA was enacted "to eliminate abusive debt collection practices, to ensure that debt collectors who abstain from such practices are not competitively disadvantaged, and to promote consistent state action to protect consumers." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 577 (2010) (citing 15 U.S.C. § 1692(e) ). The statute "regulates interactions between consumer debtors and debt collectors," *id.* (internal quotation marks omitted), for the "purpose" of "protect[ing] consumers," *Muha v. Encore Receivable Mgmt., Inc.*, 558 F.3d 623, 628 (7th Cir. 2009). Among numerous other protections, the FDCPA provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt," including "[c]ommunicating ... credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(8).

Plaintiff argues that he is entitled to summary judgment because the undisputed facts show that defendants violated 15 U.S.C. § 1692e(8) and the violation was not excusable as a bona fide error under 15 U.S.C. § 1692k(c). MCM cross-moves for summary judgment, arguing that the undisputed facts do not establish a violation of § 1692e(8) and, even if they do, they also establish that the violation was due to a bona fide error and plaintiff has not suffered any actual damages. Additionally, MCM argues, even if the Court denies MCM's motion, it must also deny plaintiff's because there is a genuine factual dispute on the issue of whether plaintiff incurred the Synchrony Bank debt primarily for personal, as opposed to business, purposes. Further, MCM argues, even if it is not entitled to summary judgment on its bona fide error defense, there is at least a genuine factual dispute on the issue. MF argues that it is entitled to summary judgment for the additional reason that it is not a debt collector.

**I. WHETHER MF IS A "DEBT COLLECTOR"**
The FDCPA applies to "debt collectors," a term that the statute defines generally as "any person [1] ... in any business the principal purpose of which is the collection of any debts, or [2] who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). MF argues that it is not a "debt collector" because it does not engage in any collection activity itself; it merely purchases debt, which it assigns to MCM for collection.

Plaintiff argues that MF is a debt collector under the "principal purpose" prong of § 1692a(6) because its sole purpose and revenue source is the collection of debt, and alternatively, it engages in collection activity by filing collection lawsuits against debtors.

**\*3** The Court agrees with plaintiff. MF asserts that its "sole business purpose is to purchase debt," which it "assigns ... to MCM for servicing and collection." (Defs.' LR 56.1 Stmt. of Add'l Facts ¶¶ 11, 15.) The Court sees no way to construe this assertion other than as an admission that MF is a "debt collector" under the "principal purpose" prong of § 1692a(6). As this Court has recently explained, "[i]f the collection of debts is precisely what sustains the business, unaided by any other significant sources of revenue, then the 'collection of ... debts' must be the business's 'primary purpose.' " *McMahon v. LVNV Funding, LLC*, 301 F. Supp. 3d 866, 884 (N.D. Ill. 2018). MF has left no doubt that debt collection is its lifeblood, so the Court can only conclude that it is a "debt collector" under the FDCPA.

MF argues that, even under the "principal purpose" prong of § 1692a(6), no person or entity can be a "debt collector" unless it interacts with consumers. The Court does not agree. Section 1692a(6) has two distinct prongs, and "[e]ven if the second prong may require interaction with debtors, the plain language of the first prong does not." *McMahon*, 301 F. Supp. 3d at 884 (citing *Tepper v. Amos Fin., LLC*, No. 15-CV-5834, 2017 WL 3446886, at \*8 (E.D. Pa. Aug. 11, 2017), *aff'd*, 898 F.3d 364 (3d Cir. 2018) ).

Additionally, even if a person or entity must engage in some collections activity in order to qualify as a "debt collector" even under the "principal purpose" prong (and,

as the Court has explained, it finds no support for any such reading in the text of the statute), plaintiff has adduced evidence of collections activity in the form of the collections lawsuits MF has filed. See *McMahon*, 301 F. Supp. 3d at 884.

As defendants recognize, a debt collector must monitor other debt collectors it enlists to perform collection services on its behalf, or it is vicariously liable for any FDCPA violations they commit. See *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325-26 (7th Cir. 2016). The Court agrees with plaintiff that MF is a "debt collector" under the FDCPA because the "principal purpose" of its business is the collection of debts, and it can be held vicariously liable for any violations of the FDCPA that MCM may have committed.

**II. WHETHER THE SYNCHRONY BANK ACCOUNT WAS A "DEBT"**
Under 15 U.S.C. § 1692a, the FDCPA applies to "debts" incurred "primarily for personal, family, or household purposes." Defendants argue that there is a genuine factual dispute over whether the Synchrony Bank account was primarily for personal purposes rather than business purposes, given that plaintiff is a handyman and credit card statements appear to show that the debt that plaintiff could not pay was for a purchase of mortar and grout at Lowe's. Plaintiff responds that he did use the Synchrony Bank credit card account primarily for personal purposes; at his deposition, he testified that he used the card for such things as "gas," "clothing," or other "personal items." (Defs.' LR 56.1 Stmt. of Add'l Facts, Ex. 1, Pl.'s Dep. at 34:4, ECF No. 75-1.) The Court agrees with defendants that whether they were trying to collect a "debt" within the FDCPA's definition of the term is an issue of fact for a jury to resolve.

**III. WHETHER DEFENDANTS VIOLATED § 1692e(8)**
It is undisputed that MCM reported information about plaintiff's debt to credit bureaus without communicating that plaintiff had disputed the debt. Defendants argue, however, that they cannot be liable under the circumstances of this case because (a) it would impose unreasonable burdens on them to have to report disputes to credit bureaus in less than seven days, and (b) plaintiff has unclean hands.

**A. "Reasonableness" of defendant's burden**
**\*4** There is no support for defendants' reasonableness argument in the text of the statute, nor do defendants cite pertinent case law. Defendant relies in part on the Fair Credit Reporting Act ("FCRA"), which requires reporting agencies to mark accounts as disputed within thirty days of receiving notice of the dispute. See 15 U.S.C. § 1681i(a)(1)(A). But this provision of the FCRA has nothing to do with the FDCPA, § 1692e, or this case. As plaintiffs explain, the Seventh Circuit has taken a dim view of the argument that courts should look to the FCRA for this sort of guidance in interpreting the FDCPA. In *Evans v. Portfolio Recovery Associates, LLC*, the defendants similarly argued that § 1692e(8) should be interpreted in light of a provision of the FCRA, but the Seventh Circuit found the argument unpersuasive because the defendants were relying on a "a different provision with different requirements," and the FDCPA did not incorporate it or adopt its requirements by reference. 889 F.3d 337, 348 (7th Cir. 2018). The same reasoning applies here, and defendants' argument is unpersuasive for the same reason.

"In the Seventh Circuit, the FDCPA is a 'strict liability statute.' " *Bass v. I.C. Sys., Inc.*, 316 F. Supp. 3d 1047, 1051 (N.D. Ill. 2018) (quoting *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 646 (7th Cir. 2009) ). "Debt collectors may not make false claims, period." *Randolph v. IMBS, Inc.*, 368 F.3d 726, 730 (7th Cir. 2004). Apart from the bona fide error defense under § 1692k(c), which the Court discusses below in Part IV of this Opinion, § 1692e(8) contains no reasonableness requirement, and defendants' argument is without merit.

**B. Unclean Hands**
Defendants argue that plaintiff has unclean hands because this lawsuit was engineered by his counsel. According to defendants, plaintiff himself was never troubled by defendants' actions, and he filed this "gotcha" lawsuit in bad faith, based on his counsel's knowledge that he could catch defendants in a violation of the FDCPA that is no more than a harmless technicality.

In a virtually identical case, another court of this district has recently explained that there is no unclean hands defense available to debt collectors under the FDCPA, reasoning that the defense is not authorized by the text of the FDCPA, nor would recognizing it be consistent with the statute's animating policy or governing case law.

*Francisco v. Midland Funding, LLC*, No. 17 C 6872, 2019 WL 1227791, at *2-3 (N.D. Ill. Mar. 15, 2019) ("Allowing an unclean hands defense would transform the rule from 'Debt collectors may not make false claims, period,' to 'Debt collectors may not make false claims, comma.' ") (quoting *Randolph*, 368 F.3d at 730). The Court finds this decision persuasive. As in *Francisco*, defendants have not pointed to any basis for an unclean hands defense in the text of the FDCPA or in any governing case law, nor does the Court see any other basis for one. The Court agrees with plaintiff that defendant may not assert an unclean hands defense in this case.

**IV. BONA FIDE ERROR DEFENSE**
Under the FDCPA,

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C.§ 1692k(c). "In order to claim this defense, the burden is on the defendant to show (1) 'that the presumed FDCPA violation was not intentional'; (2) 'that the presumed FDCPA violation resulted from a bona fide error'; and (3) 'that it maintained procedures reasonably adapted to avoid any such error.' " *Evans v. Portfolio Recovery Assocs., LLC*, 889 F.3d 337, 349-50 (7th Cir. 2018) (quoting *Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 537 (7th Cir. 2005) ). The bona fide error defense applies to "errors like clerical or factual mistakes." *Jerman*, 559 U.S. at 587; *see id.* at 604-05 (bona fide error defense does not apply to errors based on mistaken interpretation of the FDCPA).

**\*5** Defendants argue that, even if MCM violated the FDPCA by communicating information about plaintiff's debt without communicating that the debt was disputed, MCM's action was an unintentional error made in spite of procedures reasonably adapted to avoid any such error.

The Court disagrees. Again, the *Francisco* case, in which the facts were virtually identical, is persuasive. In that case, the Court reasoned as follows:

> MCM prophylactically takes what it considers ambiguous or confusing letters and categorizes them as disputes. But MCM's dispute-reporting procedures are not designed to prevent the error that occurred in this case. MCM works with such a volume of accounts that it is most practical to report disputes to credit bureaus in batches. MCM compiles those disputes on Monday and sends them to the bureaus on Friday, with a quality-control check somewhere between. Considering the volume of disputes MCM could receive or process between finalizing and delivering its batch of reports, that policy tolerates the risk of violating 15 U.S.C. § 1692e(8) exactly as it did here. Locking in reports on Monday and delivering them on Friday means that every dispute received or processed on Tuesday, Wednesday, Thursday, and Friday of the reporting week (of which there are likely thousands) might not be noted in Friday's report to credit bureaus. Francisco's letter fell through the cracks because MCM designed a system with cracks. No reasonable jury could find that MCM's procedure was "reasonably adapted to avoid" the error that occurred in this case. 15 U.S.C. § 1692k(c).

*Francisco v. Midland Funding, LLC*, No. 17 C 6872, 2019 WL 498936, at *5 (N.D. Ill. Feb. 8, 2019). The Court agrees that, as in *Francisco*, plaintiff's letter "fell through the cracks because MCM designed a system with cracks."

To be sure, defendants are correct that, to take advantage of the bona fide error defense, debt collectors need not have taken "every conceivable precaution to avoid errors"; they need only have taken "reasonable precaution[s]." *Kort*, 394 F.3d at 539. But defendants have not even argued that MCM's mid-week "quality control checks" or any other preventative measures MCM took were the sort of

"reasonable precautions" that might have prevented—but, in this case, due to error, did not prevent—the misleading communication that MCM made to Equifax. Rather, the argument appears to be that (1) MCM has procedures for marking accounts as disputed, and (2) following those procedures permitted MCM to mark plaintiff's debt as disputed within one-and-a-half business days; but (3) MCM had already generated its bimonthly report by the time the account was marked disputed, so (4) when the report was distributed to credit reporting agencies five days thereafter, it was unintentionally misleading. (*See* MCM Mem. Supp. Cross Mot./Resp. Br. at 11-15, ECF No. 76.)

Just as the Court explained in *Francisco*, the trouble with this argument is that it does not address why, once the dispute letter was processed on the evening of August 21, 2017, defendant could not then update the information that it planned to transmit to credit bureaus on the following Friday. Had MCM generated the report on August 21 and sent it out later that same day, before it was able to process receipt of the dispute letter, defendants might have a viable bona fide error defense. *See Smith v. Transworld Sys., Inc.*, 953 F.2d 1025, 1030-31, 1034-35 (6th Cir. 1992) (affirming summary judgment for debt collector on bona fide error defense because collection letter sent one day after debt collector received request to cease communication pursuant to § 1692c(c) was a "clerical error" caused by cease-communication letter and collection letter effectively "crossing in the mail").

**\*6** But defendants do not explain, and the Court fails to see, why MCM could not have intervened in the four days between the time it received notice of the dispute and the time it reported debt information to credit bureaus. *See id.* at 1035-36 (Krupansky, J., dissenting in part) (system that made it impossible to withdraw a debtor's name from a computer-generated mailing list within two days of receiving cease-communication letter before sending out another round of collection notices "cannot be characterized as a procedure reasonably designed to avoid violations of the [FDCPA]"). If the system MCM has designed is one in which it is impossible to receive a dispute letter on a Friday evening and update the report it sends to credit bureaus by the following Friday, then it is a system that, far from being "reasonably adapted" to avoid FDCPA violations, is "intentionally structured and implemented" to "def[y] compliance" with the "absolute dut[ies]" of the FDCPA. *See id.* at 1036. Under the circumstances of this case, defendants cannot establish a bona fide error defense under § 1692k(c), and summary judgment for plaintiff is appropriate on that issue.

**V. ACTUAL DAMAGES**

Defendants argue that plaintiff cannot establish any actual damages, as he has not pointed to any financial or economic consequences he suffered, nor has he adduced sufficient evidence of emotional distress. Plaintiff responds that he has adduced evidence of emotional distress, having attested that defendants' actions caused him stress and such emotions as annoyance, aggravation and humiliation. (*See* Pl.'s Resp./Reply Br. at 9-11, ECF No. 83.)

The Court agrees with defendants that the evidence plaintiff cites is not sufficient to support an award of actual damages for emotional distress. As the court explained in *Francisco*, to obtain such damages based only on his own testimony, plaintiff must describe the injury he suffered in "reasonable detail," not in "conclusional statements," unless defendants' conduct is so "inherently degrading" that a jury could reasonably infer emotional distress from defendants' conduct alone. 2019 WL 498936, at \*6 (internal quotation marks and alterations omitted) (citing *Wantz v. Experian Info. Sols.*, 386 F.3d 829, 834 (7th Cir. 2004) abrogated in other part by *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007) ). There is nothing "inherently degrading" about sending a report to credit bureaus that "correctly recit[es] the amount of the debt but incorrectly omit[s] that the debt is disputed," *Francisco*, 2019 WL 498936, at \*6, and plaintiff has not provided any evidence of any actual damages other than "conclusional statements" of the negative emotions he felt. *See id.*; *Brand v. Caliber Home Loans, Inc.*, No. 16-CV-03432, 2018 WL 4898572, at \*8-9 (N.D. Ill. Oct. 9, 2018).

The parties will have to address the issue of damages at trial, nevertheless, because plaintiff may be entitled to statutory damages even if he cannot prove actual damages, *Francisco*, 2019 WL 498936, at \*7 (citing *Keele v. Wexler*, 149 F.3d 589, 593 (7th Cir. 1998) ), and "the FDCPA provides for trial by jury in determining statutory ... damages," *Kobs v. Arrow Serv. Bureau, Inc.*, 134 F.3d 893, 896-99 (7th Cir. 1998); *see McMahon*, 301 F. Supp. 3d at 880-81. But plaintiff has not produced sufficient evidence to submit any claim of actual damages to a jury.

**CONCLUSION**

For the foregoing reasons, plaintiff's motion for summary judgment [51] is granted in part and denied in part, and defendants' motions for summary judgment [76, 77] are granted in part and denied in part. There are no genuine factual disputes as to the following issues: defendant Midland Funding, LLC, is a debt collector; defendants violated 15 U.S.C. § 1692e(8); defendants' violation was not due to a bona fide error that excuses the violation under

15 U.S.C. § 1692k(c); and plaintiff did not suffer any actual damages from the violation. There is a triable factual dispute as to whether the Synchrony Bank account is a "debt" under 15 U.S.C. § 1692a(5) and, if so, the amount of statutory damages to award plaintiff. The parties are directed to meet and confer to discuss settlement. A status hearing is set for May 8, 2019 at 9:30 a.m.

**SO ORDERED.**

**All Citations**

Slip Copy, 2019 WL 1429656

---

End of Document

© 2019 Thomson Reuters. No claim to original U.S. Government Works.