IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

STEPHANIE REYGADAS                                                                    PLAINTIFF

V.                                    No. 2:18-CV-02184

DNF ASSOCIATES, LLC                                                                   DEFENDANT

## ORDER

Currently before the Court are Plaintiff's Bill of Costs (ECF No. 53) filed September 30, 2019 and her Motion for Attorney's Fees[1] (ECF No. 54) and supporting brief and exhibits (ECF No. 55) filed on October 1, 2019. Defendant filed its Opposition to Plaintiff's Counsel's Motion for Attorney's Fees (ECF No. 59) on October 15, 2019. The matter was referred to the undersigned on November 4, 2019. For the reasons set forth below, Plaintiff's Bill of Costs (ECF No. 53) is GRANTED and Plaintiff's Motion for Attorney's Fees (ECF No. 54) is GRANTED IN PART.

**I.      BACKGROUND**

Plaintiff, Stephanie Reygadas ("Reygadas") filed this civil action against DNF Associates, LLC ("DNF") on October 29, 2018, alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq., and the Arkansas Fair Debt Collection Practices Act ("AFDCPA"), Ark. Code Ann. § 17-24-501, et seq. (ECF No. 1). DNF sued Reygadas in state court, only to have DNF hire Radius Global Solutions ("RGS") to contact Reygadas, instead of her retained counsel, to "settle" the debt. (*Id*., pp. 5-6).

On November 20, 2018, DNF moved to dismiss under Rule 12(b)(6), arguing it was not a "debt collector" under the primary purpose prong of the FDCPA and the AFDCPA because it was a "passive debt buyer," and that it could not be liable under the FDCPA or AFDCPA for RGS's

---

[1] Erroneously titled Memorandum Brief in Support of Plaintiff's Motion for Attorney's Fees.

1

contact with Reygadas. (ECF Nos. 8, 9). After further research of DNF's debt collection activities in Arkansas, Reygadas filed a First Amended Complaint, which included more facts establishing that DNF's primary purpose was debt collection. (ECF No. 11). Reygadas also filed an opposition to DNF's motion to dismiss with a memorandum brief in support, explaining how DNF was a "debt collector" under the primary purpose prong of the statutory definition of a "debt collector," and how it knew Reygadas was represented by counsel and violated the FDCPA and the AFDCPA by hiring RGS to collect the debt directly from Reygadas. (ECF No. 12). DNF moved to dismiss the First Amended Complaint on December 18, 2018. (ECF Nos. 14, 15).

The parties held their Rule 26(f) Conference on December 10, 2018. (ECF No. 16). During the conference, DNF requested a settlement demand from Reygadas. As requested, Reygadas made an Offer of Compromise on December 12, 2018: Reygadas would release her claims in exchange for payment of $12,000.00 and cessation of debt collection efforts against her. (ECF No. 55-3). The Offer of Compromise also explained the time that Reygadas' counsel had devoted to the case prior to filing the original complaint and then preparing the First Amended Complaint and opposition to the motion to dismiss, and that if DNF intended to litigate the "passive debt buyer" arguments through trial, then the attorney time and resources it would take to resolve the case through a trial would likely far exceed the money a jury might allow Reygadas for her statutory and actual damages. (*Id.*). DNF did not accept Reygadas' offer of compromise, make a counter-offer, or engage in any settlement discussions.

Reygadas then prepared and served her Initial Disclosures (which included several debt collection complaints and other filings, i.e., default judgments, by DNF in Arkansas state courts that Reygadas' counsel spent time searching for and organizing so Reygadas could prove DNF's primary purpose was debt collection), Interrogatories, and Request for Admissions. She had

2

already served her Request for Production. DNF then moved to stay discovery and to shorten Reygadas' time to respond to the motion to stay discovery. (ECF Nos. 18-20). On December 28, 2018, the Court denied DNF's motion to dismiss, the motion to stay discovery, and the motion to shorten time. (ECF No. 22).

DNF moved for summary judgment on March 15, 2019. (ECF Nos. 25-27). In order to oppose DNF's motion for summary judgment, Reygadas' counsel spent time identifying 129 debt collection lawsuits and the associated filings (i.e., motions for default judgments and default judgments) DNF had filed in Arkansas state courts after Reygadas filed her complaint against DNF. These debt collection lawsuits were presented in support of her opposition to DNF's motion for summary judgment, to specifically rebut DNF's "passive debt buyer" argument by showing it was still engaging in debt collection activities by suing Arkansas consumers to collect defaulted debts it had purchased. Reygadas' counsel also spent time researching the "passive debt buyer" issue to prepare her opposition to DNF's motion for summary judgment. (ECF Nos. 28, 29).

On May 16, 2019, the Court found as a matter of law that DNF was a "debt collector" as defined by the FDCPA and the AFDCPA; that it violated the FDCPA and AFDCPA because it knew Reygadas was represented by counsel when it hired RGS to collect the debt from her; and, that the only remaining issue for jury trial was to determine the damages that Reygadas could recover. (ECF No. 35). DNF moved for certification for an interlocutory appeal on May 23, 2019 (ECF Nos. 36, 37), which the Court denied on May 29, 2019 (ECF No. 38).

DNF then pursued discovery, including the service of interrogatories, requests for production of documents, and the deposition of Reygadas. (ECF No. 55, p. 5). After Reygadas' deposition, counsel for the parties resolved the case by the accepted Offer of Judgment filed on September 17, 2019. (ECF No. 51). Judgment in the amount of $4,000.00, plus post-judgment

interest, was entered on the same date. (ECF No. 52). The Offer of Judgment further provided for payment of "reasonable attorneys' fees and taxable costs incurred in this action prior to expiration of this offer, such fees to be determined by agreement of the parties and, if the parties cannot agree, by the Court upon motion of the Plaintiff." (ECF No. 51, ¶ 1). Reygadas filed her Bill of Costs on September 30, 2019. (ECF No. 53). Her pending Motion for Attorney's Fees and supporting brief were filed on October 1, 2019. (ECF Nos. 54, 55). DNF's response in opposition to Reygadas' motion for attorney's fees was filed on October 15, 2019. (ECF No. 59). The matter was referred to the undersigned on November 4, 2019.

## II. DISCUSSION

Reygadas seeks a total of $803.28 in costs and $26,550.00 in attorney's fees. In support of her motion for attorney's fees, Reygadas submitted the sworn declaration of her attorney, Corey D. McGaha ("McGaha") (ECF No. 55-1); an itemized list of hours billed to this case by McGaha (ECF No. 55-2); the Offer of Judgment (ECF No. 55-3); the sworn Affidavit of Todd M. Turner, an Arkansas attorney (ECF No. 55-4); and, a separate Bill of Costs (ECF No. 53). As noted above, the Offer of Judgment explicitly provides that Reygadas is entitled to recover reasonable attorney's fees and costs. The issue here is whether the amounts claimed by Reygadas are reasonable. DNF does not object to the amount of costs. Regarding attorney's fees, DNF objects to the reasonableness of the hourly rate claimed by McGaha and the number of hours expended in the case. (ECF No. 59).

### A. Costs

Under 28 U.S.C. § 1920, a court may tax certain litigation fees as costs. Pursuant to that statute, the Court awards the following:

| Description | Amount | Authority |
|---|---|---|
| Filing Fee | $400.00 | § 1920(1) |
| Service of Summons | $7.33 | § 1920(1) |
| Transcript of Reygadas' Deposition | $385.25 | § 1920(2) |
| Exemplification Fees | $10.70 | § 1920(4) |
| Total | $803.28 | |

Accordingly, Reygadas' total cost award, excluding attorney's fees, is $803.28.

**B. Attorney's Fees**

The fee-shifting provision of the FDCPA provides for the mandatory award of attorney's fees and costs. The fee-shifting provision of the statutory scheme states:

> "(a) Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of —
>
> (1) any actual damage sustained by such person as a result of such failure;
> (2)(A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000;
> …
> (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court. …"

15 U.S.C. § 1692k(a). The AFDCPA has a nearly identical fee-shifting provision. Ark. Code Ann. § 17-24-512(a)(3)(A). The award of attorney's fees to plaintiffs for a debt collector's violation of "any provision" of the FDCPA is mandatory. *See Tolentino v. Friedman*, 46 F.3d 645, 651 (7th Cir.), *cert. denied*, 515 U.S. 1160 (1995); *Zagorski v. Midwest Billing Services, Inc.*, 128 F.3d 1164, 1166 (7th Cir. 1997) (per curiam); *Hennessy v. Daniels Law Office*, 270 F.3d 551, 553 (8th Cir. 2001) (citing *Zagorski*). The Act mandates an award of attorney's fees as a means of

fulfilling Congress's intent that the Act should be enforced by debtors acting as private attorneys general. *Reynolds v. Credit Bureau Services, Inc.*, 8:15CV168, 2016 WL 2864411, * 2 (D. Neb. May 16, 2016) (citing *Gonzales v. Arrow Financial Services*, *LLC*, 660 F.3d 1055, 1061 (9th Cir. 2011)).

Having obtained a judgment of $4,000 for her actual and statutory damages under the FDCPA and AFDCPA, Reygadas has brought a "successful action" under the FDCPA and AFDCPA and thus is entitled to a "reasonable attorney's fee" pursuant to 15 U.S.C. § 1692k(a)(3).

The starting point for determining a reasonable amount of attorney's fees is the time-based lodestar determination, which is calculated by multiplying the number of hours reasonably expended by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005). In determining the lodestar, a court may consider such facts as:

> "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases."

*Hensley*, 461 U.S. at 430 n.3. The lodestar calculation "provides an objective basis on which to make an initial estimate of the value of the lawyer's services." *Id*. at 433. There is a strong presumption that the lodestar method yields a "reasonable fee." *Perdue v. Kenney A. ex rel. Winn*, 559 U.S. 542, 552 (2010).

### 1. Hourly Rate

"As a general rule, a reasonable hourly rate is the prevailing market rate, that is, 'the ordinary rate for similar work in the community where the case has been litigated.'" *Moysis v. DTG Datanet*, 278 F.3d 819, 828-29 (8th Cir. 2002) (quoting *Emery v. Hunt*, 272 F.3d 1042, 1047 (8th Cir. 2001)).

Reygadas bases her claim for attorney's fees on McGaha's hourly rate of $300.00. McGaha submitted a declaration in which he describes his educational background and prior experience, and he states that his requested rate of $300.00 per hour is reasonable. (ECF No. 55-1).

In support of her request for attorney's fees, Reygadas also submitted the Affidavit of Todd M. Turner, an Arkansas attorney since 1992, who states his experience in consumer protection advocacy, including his position as the Arkansas State Chairman of the National Association of Consumer Advocates. Mr. Turner indicates his awareness of the hourly rates charged by attorneys in Arkansas, that he is familiar with fees awarded by courts as fair "market value" for this type of legal work, and he expresses his belief that the hourly rate sought by McGaha "is reasonable and commensurate for the hourly rates charged by attorneys for similar work." (ECF No. 55-4).

DNF does not dispute Mr. Turner's litigation experience, but instead points to an absence of any statement from Mr. Turner regarding the prevailing rate for attorneys in this district in FDCPA or AFDCPA litigation, and DNF suggests that decisions in the district courts of Arkansas that articulate the prevailing rate for an attorney litigating an FDCPA or AFDCPA are more instructive. (ECF No. 59, p. 3). DNF contends that decisions in the Eastern and Western Districts of Arkansas make clear that a rate of $250.00 is the appropriate rate for an experienced attorney

7

litigating FDCPA or AFDCPA in Arkansas federal courts, and it cites three cases to support this position. (*Id.*, p. 4). The most recent of these cases, however, is now more than six years old.

Reygadas points to three more recent attorney-fee awards in this district in other types of federal fee-shifting cases, including: *Henry Law Firm v. Cuker Interactive, LLC*, No. 5:18-CV-5066, 2019 WL 885921 (W.D. Ark. Feb. 22, 2019) ($300 hourly rate approved in contract dispute); *Dilbeck v. Minor*, No. 5:17-CV-5116, 2018 WL 5284211 (W.D. Ark. Oct. 24, 2018) ($300 hourly rate approved in a § 1983 case); and, *Murdock v. McNair*, No. 5:17-CV-05225, 2018 WL 6314569 (W.D. Ark. Dec. 3, 2018) ($325 per hour "slightly too high" given the prevailing market rate for similar work by attorney with 17 years' experience, but fee based on $300 hourly rate approved in a successful FLSA case).

Regarding the level of skill required in litigating consumer protection cases in federal court, Reygadas cites *Phenow v. Johnson, Rodenberg & Lauinger, PLLP*, 766 F. Supp. 2d 955, 958 (D. Minn. 2011), in which the Court observed:

> "The Court also notes that the skill-set that must be brought to bear by the litigation counsel in a consumer-protection case in federal court is comparable to that of any attorney who must litigate a complex federal statutory scheme through the federal court system, whether the federal case involves employment statutes, civil rights law, or the myriad other federal statutes that provide damage remedies. There is a level of skill required in litigating cases in federal court that has to be taken into account in determining the fee award."

The point is well taken, and the undersigned agrees that attorney's fee awards under other federal fee-shifting provisions provide a persuasive measure of "reasonable attorney's fees" in FDCPA or AFDCPA cases.

Considering the foregoing in light of the Court's experience and familiarity with the prevailing market rate in the Fort Smith, Arkansas community, the Court concludes that McGaha's requested rate of $300.00 per hour is reasonable in this case.

### 2. Hours Expended

Reygadas submits that she is entitled to recover fees for 97.6 hours of time expended by her attorney in litigating this case.[2] (ECF No. 55-1, p. 4; ECF No. 55-2). In his sworn declaration, McGaha states that he "exercised billing discretion by reducing the time charged for certain tasks or where I believed there might be redundancy or overlap." (ECF No. 55-1, p. 3). In its opposition, DNF argues that the time spent by Reygadas' counsel litigating this case is excessive because: (1) several time entries are clerical and administrative in nature; (2) several entries are excessive; and, (3) several entries related to travel, which DNF submits, should be subject to a rate reduction of 50%. (ECF No. 59, pp. 4-5).

A district court has discretion in determining the number of hours to be awarded when conducting the lodestar calculation. *See Fires v. Heber Springs Sch. Dist.*, 565 F. App'x 573, 576 (8th Cir. 2014) (unpublished) (internal citations omitted) (reviewing district court's decision to classify hours as excessive for abuse of discretion and "giving due deference to the district court's unique understanding of the legal and factual issues implicated by this matter and counsel's handling of them"). In exercising this discretion, the court "should weigh the hours claimed against [the court's] own knowledge, experience, and expertise of the time required to complete similar activities." *Gilbert v. City of Little Rock, Ark.*, 867 F.2d 1063, 1066 (8th Cir. 1989)

---

[2] The Court notes that McGaha identified 9.1 hours spent preparing a motion for summary judgment on certain affirmative defenses raised by DNF; but, because the Court found that the motion was moot based on its previous ruling that DNF was a debt collector, had violated the FDCPA and AFDCPA, and that a trial would only be held on Plaintiff's damages, McGaha does not request compensation for that time. Thus, Reygadas seeks compensation for 88.50 hours. (ECF No. 55-1, p. 3).

9

(quotation omitted). Prevailing parties are not entitled to recover for hours that were not "reasonably expended." *Holloway v. Gravett*, 723 F. Supp. 107, 108 (E.D. Ark. 1989) (quoting *Hensley*, 461 U.S. at 433). The Court has thoroughly reviewed the pre-bill submitted by Reygadas' counsel and addresses each of DNF's arguments below.

### a. Clerical or Administrative Time Entries

DNF first contends that several time entries are clerical and administrative in nature and should not be awarded. (ECF No. 59, p. 5).

"[T]hose hours expended by counsel 'on tasks that are easily delegable to non-professional assistance'" should be disallowed. *See Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 553 (7th Cir. 1999) (citing *Halderman v. Pennhurst State Sch. & Hosp.*, 49 F.3d 939, 942 (3rd Cir. 1995) (reasoning that legal service rates are not applicable when an attorney provides services that could have been easily delegated to a non-professional)); *Beauford v. ActionLink, LLC*, No. 4:12CV00139 JLH, 2014 WL 183904, *4 (E.D. Ark. Jan. 15, 2014) ("Secretarial work on a case should not be billed to a client, nor to an opposing party in a fee-shifting case.").

DNF presents a chart summarizing those time entries it contends are for clerical matters, such as downloading documents from the internet, calendaring dates, and updating the trial binder. (ECF No. 59, pp. 5-8). Some of the entries reflect work that is clearly clerical or administrative in nature and should be disallowed (i.e., updating the trial notebook, preparing documents for mailing, Bates stamping documents). Included in DNF's chart are time entries for downloading pleadings in debt collection cases DNF had filed in other Arkansas courts. Considering DNF's position in this case that it was only a "passive debt buyer" and not a "debt collector," the Court finds that the entries related to researching this factual issue and obtaining documents in other DNF cases in Arkansas courts reflect time reasonably spent by Reygadas' counsel to support the

position that DNF was a "debt collector." After considering the *Hensley* factors and the circumstances of this case, the Court finds that a slight reduction, in the amount of 8.3 hours, is reasonable to account for the clerical or administrative work.

### b. Excessive, Duplicative, and Unnecessary Time Entries

DNF next argues that McGaha's billing records also include tasks that took excessive time and entries that have interwoven legal services with routine tasks that should not be billed. (ECF No. 59, p. 8). DNF identifies certain time entries it contends are excessive for the work performed, and it presents two charts in support of its argument that certain time entries include non-billable tasks: one chart summarizes the time entries that include the interwoven routine, non-billable tasks; and, a second chart that reflects the same entries with DNF's requested time reductions. (*Id.*, pp. 9-13).

The Court finds that the time spent in drafting the Amended Complaint, reviewing pleadings and papers in two separate cases DNF was a party to, and in drafting the statement of facts in opposition to DNF's motion for summary judgment was reasonable and warrants no reduction. Regarding the time entries interwoven with routine, non-billable tasks, the Court finds some reduction appropriate, and the hours requested by Reygadas' counsel should be reduced by a total of 2.8 hours to account for the routine, non-billable tasks.

### c. Travel Time

DNF also objects to compensation for McGaha's travel time, and alternatively, suggests that if travel time is awarded it should be at a reduced hourly rate. (ECF No. 59, pp. 13-14).

McGaha's pre-bill includes a total of 6.0 hours of travel time on August 12 and 13, 2018, related to client preparation and attendance at Reygadas' deposition in Fayetteville, Arkansas. (ECF No. 55-2, p. 7). The Court declines to find that the time spent traveling for Reygadas'

11

deposition in this case is non-compensable or excessive, nor does the Court find that the rate charged for this time is unreasonable. In *Henry v. Webermeier*, 738 F.2d 188, 194 (7th Cir. 1984), Judge Posner commented:

> "When a lawyer travels for one client he incurs an opportunity cost that is equal to the fee he would have charged that or another client if he had not been traveling. That is why lawyers invariably charge their clients for travel time, and usually at the same rate they charge for other time . . . And if they charge their paying clients for travel time they are entitled to charge the defendants for that time in a case such as this where the plaintiffs have shown a statutory right to reasonable attorney's fees . . . the presumption . . . should be that a reasonable attorney's fee includes reasonable travel time billed at the same hourly rate as the lawyer's normal working time."

Considering the purpose and limited nature of the travel time expended in this case, the Court concludes that full compensation of such travel time is reasonable.

### III. CONCLUSION

For the reasons set forth above, IT IS ORDERED that Plaintiff's Bill of Costs (ECF No. 53) is GRANTED and Plaintiff's Motion for Attorney's Fees (ECF No. 54) is GRANTED IN PART. Plaintiff is awarded reasonable attorney's fees in the amount of $23,220.00 and costs in the amount of $803.28.

IT IS SO ORDERED this 23rd day of December 2019.

/s/ *Mark E. Ford*
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE